**Irene MOJICA, Plaintiff,**

v.

**GANNETT COMPANY, INC., Defendant.**

**No. 90 C 3827.**

United States District Court, N.D. Illinois, E.D.

Nov. 27, 1991.

---

Armand L. Andry, Alan D. Lyons, Oak Park, Ill., for plaintiff.

Lawrence C. DiNardo, Jeremy P. Sherman, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Irene Mojica filed this action against defendant Gannett Company, Inc. in July 1990. Plaintiff is employed as the overnight (1:00 a.m. to 5:00 a.m.) disc jockey for WGCI–FM, a Chicago radio station owned by defendant. She alleges discrimination because she is female and Hispanic. Her claims are that she receives a lower salary and less favorable assignments than male and non–Hispanic disc jockeys and that she has been sexually harassed by certain station employees. Her complaint contains six counts: (1) sex discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206 *et seq.;* (2) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* (3) national origin discrimination in violation of Title VII; (4) national origin discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981; (5) retaliation in violation of § 1981; and (6) retaliation in violation of Title VII. Plaintiff seeks damages for the period 1988 through 1991 and injunctive relief. This case is presently set for trial before a visiting judge on December 2, 1991.

Anticipating that the Civil Rights Act of 1991 (the "1991 Act") would soon be passed, on November 12, 1991 plaintiff filed a motion to amend her complaint. That motion was presented in court on November 25, by which time the 1991 Act had been signed into law, the president having signed it on November 21. Plaintiff seeks to amend her complaint to add compensatory damages, punitive damages, and a jury demand for her Title VII claims. She also moves to strike any motion of defendant seeking to limit her § 1981 claims or to keep evidence of sexual harassment from the jury. The parties are in agreement as to how application of the 1991 Act would affect this case. The parties, however, disagree as to whether the 1991 Act applies to the present case. Plaintiff contends that the 1991 Act applies to all cases pending at the time the Act was passed and to all future cases. Defendant contends it only applies to conduct occurring on or after the date on which the 1991 Act was passed.

Section 3 of the 1991 Act states:

The purposes of this Act are—

(1) to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace;

(2) to codify the concepts of "business necessity" and "job related" enunciated by the Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424 (1971) and in other Supreme Court decisions prior to Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989);

(3) to confirm statutory authority and provide statutory guidelines for the adjudication of disparate impact suits under Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.); and

(4) to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protections to victims of discrimination.

Section 22 of the 1991 Act sets forth the effective date of the Act:

(a) IN GENERAL.—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

(b) CERTAIN DISPARATE IMPACT CASES.—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975 and for which an initial decision was rendered after October 30, 1983.

Senator Danforth, one of the cosponsors of the legislation, at one time stated on the floor of the Senate that the new legislation was to apply prospectively only. Senator Kennedy expressed a disagreement with that view. Ultimately, however, Senator Danforth expressed the view that there was no clear legislative history, only various and inconsistent statements from a number of senators and representatives and that any court seeking to interpret the statute should look to the language of the statute, not the statements of the legislators, and apply appropriate rules of construction. See 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991); Id. S15,325 (daily ed. Oct. 29, 1991). The parties agree that the legislative debates are inconclusive and that the court should construe the language of the statute based on case precedent.

■ A recent Supreme Court case acknowledges that there are inconsistent precedents regarding what to do when language and legislative history are inconclusive on the question of whether a statute is to be applied retroactively. See Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990). One line of cases indicates that retroactivity is disfavored and that congressional enactments and administrative rules will not be construed to have a retroactive effect unless their language requires otherwise. See Bowen v. Georgetown University Hospital, 488 U.S. 204, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (agency did not have congressional authority to promulgate retroactive cost rules). Another line of cases indicates that statutes going into effect during the pendency of a case are presumed to be applied in that case unless there is clear congressional intent to the contrary or application of the law would result in manifest injustice to one of the parties. See Bradley v. School Board of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (intervening statute applies unless a contrary intention appears or the application would result in manifest injustice); Thorpe v. Durham Housing Authority, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). In Bonjorno, it was unnecessary to resolve any inconsistency in the cases because a clear congressional intent (against retroactivity by making the statute effective six months after enactment) was found.[1] A recent Seventh Circuit case, however, holds that Bradley continues to apply. After noting that Bonjorno recognizes an existing tension, but does not resolve it, Judge Ripple stated:

Despite the existence of an alternative line of precedent, we believe there is no prejudice in applying only Bradley and its progeny to the facts in this case. Any tension between the two lines of precedent is negated because, under

---

1. In a concurring opinion, Justice Scalia states that he would hold that the rule announced in Thorpe and Bradley is wrong and that absent specific indication to the contrary, the operation of nonpenal legislation is prospective. Bonjorno, 110 S.Ct. at 1579 ff. (Scalia, J., concurring).

*Bradley,* a statute will not be deemed to apply retroactively if it would threaten manifest injustice by disrupting vested rights.

*Federal Deposit Insurance Corp. v. Wright,* 942 F.2d 1089, 1095 n. 6 (7th Cir. 1991). *Contra Simmons v. Lockhart,* 931 F.2d 1226, 1230 (8th Cir.1991) (holding that *Georgetown* is the better rule). This court will follow the Seventh Circuit and apply *Bradley.*[2]

It is presumed that the 1991 Act applies to the present case unless there is a clearly expressed congressional intent to the contrary or that it would be a manifest injustice to so apply the new Act. In discerning congressional intent, analysis must begin with the pertinent language of the statute, viewed in the context of the language and design of the statute as a whole. *Orrego,* 943 F.2d at 734 (quoting *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988)). The statute expressly states that it was designed to overturn certain recent Supreme Court decisions that were said to have weakened the scope and effectiveness of federal civil rights protections. *See* 1991 Act §§ 2(2), 3(2), 3(4). That Congress overturned Supreme Court interpretations of an existing statute provides some support for applying the new amendments retroactively. *See Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 (2d Cir.1987); *Leake v. Long Island Jewish Medical Center,* 695 F.Supp. 1414, 1417 (E.D.N.Y.1988), *aff'd,* 869 F.2d 130 (2d Cir.1989) (per curiam). *See also Ayers v. Allain,* 893 F.2d 732, 754–55, *vacated & reh'd en banc,* 914 F.2d 676 (5th Cir.1990) (en banc), *cert. granted,* —— U.S. ——, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991).[3] Such a circumstance, however, is not, by itself, conclusive evidence of a con-

gressional intent to apply the statute retroactively. *See DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377, 1385 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); *Leake,* 695 F.Supp. at 1417. Consistent with *Bradley,* in order to avoid application of the statute, there must be at least "a fair indication that the statute, properly construed, has only prospective effect." *Wright,* 942 F.2d at 1095 (quoting *Campbell v. United States,* 809 F.2d 563, 572 (9th Cir.1987)). That Congress was overturning Supreme Court interpretations of the Civil Rights Act of 1964 is evidence against concluding there is a fair indication Congress intended the 1991 Act to apply prospectively only.

The specific provision regarding the effective date of the statute simply states that it is effective upon enactment. 1991 Act § 22(a). Section 22(b), which applies only to disparate impact claims and therefore is not directly applicable to this case, states that nothing in the Act applies to disparate impact cases filed before March 1, 1975 and for which an initial decision was rendered prior to October 30, 1983. Implicit in such a provision is the possibility that the Act is otherwise applicable to cases filed after March 1, 1975 and before enactment of the statute in 1991. Again, this provision supports retroactive enforcement of the statute, but is not conclusive. Still, it goes against concluding that the statute fairly indicates that it is to be applied prospectively only.

As previously indicated, the legislative debates are inconclusive regarding the retroactivity of the statute. Since the language and legislative history of the statute do not fairly indicate that the statute is to

---

**2.** Two weeks after *Wright,* the Seventh Circuit, Judge Ripple again speaking for the court, decided *Orrego v. 833 West Buena Joint Venture,* 943 F.2d 730, 734–35 (7th Cir.1991), in which it cited *Georgetown* for the proposition that an agency had no authority to promulgate retroactive rules. Judge Ripple also cited *Bradley* for the manifest injustice rule. *See id.* at 736. *Orrego* is factually distinguishable. There the statute was stated to apply to existing loans and the loan that was the subject of *Orrego* had been paid off before the new legislation was enacted. *Wright* is the controlling Seventh Circuit prece-

dent regarding the continuing viability of *Bradley.*

**3.** On the merits of the case, the *en banc* court reached a different result than the panel. It was thus unnecessary for the *en banc* court to consider whether the statute involved in that case, the Civil Rights Restoration Act of 1987, Pub.L. 100–259, 102 Stat. 28, 42 U.S.C. § 2000d–4a, applied to cases pending at the time the Restoration Act was passed.

be applied prospectively only, the presumption of retroactivity remains. Still to be determined is the question of whether it would be a manifest injustice to apply the statute retroactively.

    ■ In determining whether retroactive application would be a manifest injustice, three factors are to be considered: "1) the nature and identity of the parties; 2) the nature of the rights affected; and 3) the impact of the change in law on pre-existing rights." *Wright,* 942 F.2d at 1096 (quoting *In re Busick,* 831 F.2d 745, 748 (7th Cir. 1987)). The first factor concerns whether the matter is one between private parties only or one that involves a public entity or public concern. If only involving private concerns, then a court should be more reticent in applying a new statute retroactively if there is an undue impact on the parties' previously existing rights or relationship. That the circumstances involve private parties only, though, does not preclude retroactive enforcement. *See, e.g., Busick,* 831 F.2d at 748–49. Here, the case is between private parties only. However, the 1991 Act, like the Civil Rights Act of 1964, is intended to promote equality in our nation and provide a remedy for discrimination. This is a public concern of great importance in our society. While the present case is not one where the plaintiff is acting in the role of a "private attorney general," *see Bradley,* 416 U.S. at 719, 94 S.Ct. at 2020, the public component of the dispute between the parties cannot be ignored. The 1991 Act itself generated great public interest and substantial political dispute. While the private nature of this particular litigation is recognized, it is also recognized that this case and the legislation under consideration involve matters of substantial public concern.

    The second factor to consider is the nature of the rights involved. The question here is whether application of the new law "would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley,* 416 U.S. at 720,

94 S.Ct. at 2020–21. The parties do not have a substantial right to a bench trial, whereas the right to a jury trial, even if statutorily granted, is entitled to substantial protection. *See* Fed.R.Civ.P. 38(a). The second factor does not go against applying the provisions for a jury trial retroactively.[4] *Scarboro v. First American National Bank of Nashville,* 619 F.2d 621, 622 (6th Cir.) (per curiam), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 572, 66 L.Ed.2d 472 (1980) (amendment to Age Discrimination in Employment Act providing for jury trial applies retroactively).

    That the holding of *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), has been effectively superseded as to its limitation of § 1981 actions also does not affect a matured right of defendant. The discriminatory conduct alleged by plaintiff began prior to the holding in *Patterson.* Therefore, at the time the conduct began, the prevailing law was consistent with the 1991 Act's amendments to § 1981. Also, from the beginning of defendant's alleged conduct until the passage of the 1991 Act, the conduct alleged was always prohibited by Title VII even if not by § 1981 to the extent *Patterson* was in force. Therefore, the change in the law did not affect the rights and obligations of the parties. *See Bradley,* 416 U.S. at 721, 94 S.Ct. at 2021; *Hicks v. Resolution Trust Corp.,* 738 F.Supp. 279, 286 (N.D.Ill. 1990). What changed is plaintiff's ability to obtain additional damages for her injuries, though her Equal Pay Act claim already permitted her to obtain liquidated damages. The increased potential for damages, however, is not likely to have affected the conduct of the parties in committing any acts of discrimination that may have occurred. *See Hicks,* 738 F.Supp. at 286. While it is possible that prior knowledge of the full potential for liability might have affected the parties' settlement posture, no such argument is presented by defendant

---

**4.** On the question of keeping evidence of sexual harassment from being heard by the jury, even if the law had not changed to make the sexual harassment claim a jury issue, the evidence probably would not have been kept from the jury. Although the parties have not fully presented the issue, it is likely that evidence of sexual harassment occurring at the workplace would be relevant to proving intentional gender discrimination and therefore would have been relevant even if there were not a separate sexual harassment claim.

so it need not be considered whether such an effect could be a manifest injustice.

The third factor is the impact of the change in the law upon existing rights. Stated another way, this factor concerns "the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2021. As previously discussed, the law was already clear that the alleged conduct of defendant was prohibited. Given this fact and that there was no apparent effect on conduct, this factor does not militate against applying the statute retroactively. *Cf. id.* at 721, 94 S.Ct. at 2021; *Hicks*, 738 F.Supp. at 286.

For the foregoing reasons, it is determined that retroactive application of the 1991 Act would not be a manifest injustice.

IT IS THEREFORE ORDERED that:

(1) Plaintiff's motion to amend her complaint is granted. An amended complaint shall be filed by December 2, 1991. That amended complaint may demand a jury trial and pray for compensatory and punitive damages consistent with the provisions of the Civil Rights Act of 1991.

(2) The Civil Rights Act of 1991 is applicable to plaintiff's claims. At the commencement of trial on December 2, 1991, each party shall present the trial judge with an original and one copy of her or its amended proposed jury instructions consistent with this holding.