Jefferey L. **SOFFERIN, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., D.J. Nelson, and H.K. Tourtellott, Defendants.**

**No. 88 C 9938.**

United States District Court, N.D. Illinois, E.D.

March 9, 1992.

Raymond E. Belstner, Illinois Cent. Gulf R. Co., James Andrew Romanyak, Gregory Alan Stayart, Romanyak & Associates, Lawrence Thomas Miller, Lawrence T. Miller, Chicago, Ill., for plaintiff.

Debra J. Leonard, Earl L. Neal & Associates, Mark Elliott Furlane, Gardner, Carton & Douglas, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is American Airlines, Incorporated's ("American") motion pursuant to Federal Rule of Civil Procedure 12 to strike and dismiss portions of Count I and the entirety of Count II of Jefferey L. Sofferin's ("plaintiff") First Amended Complaint. For reasons detailed below, the motion is granted.

## FACTS

The Amended Complaint and briefs reveal that plaintiff was employed as a probationary co-pilot with American from February, 1986, to February, 1987. His goal was to become an American pilot. During his term he flew with several American pilots as part of the flight crew and was evaluated by these pilots on his cockpit performance. Captains D.J. Nelson and H.K. Tourtellott gave plaintiff unfavorable reviews. Plaintiff claims these unfavorable reviews were a consequence of the Captains' alleged anti-Semitic attitudes. Although he admitted that he never told the pilots he was Jewish, he supports his argument by claiming his outward appearance and mannerisms are peculiar to people of Jewish ancestry and thus the Captains knew he was Jewish and could inflict their religious prejudices on him.[1] The reviews of pilots who serve with the probationary pilot on a flight crew are placed in the probationary pilot's file.

At plaintiff's eleven month review with American before a review board, the board was provided with copies of the Nelson, Tourtellott, and other pilots' reports. Plaintiff was also asked a hypothetical question, as was the practice in these reviews, in which he was to specify his reaction to a certain (emergency) situation occurring on board a plane he was piloting. Plaintiff failed to answer the question properly. Plaintiff was never promoted to pilot.

Plaintiff sued American, and Captains Nelson and Tourtellott under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 of the Civil Rights Act of 1866 claiming American failed to promote him to pilot because of religious discrimination. On January 31, 1992, plaintiff filed his amended complaint seeking both compensatory and punitive damages under 42 U.S.C. § 2000e (Title VII) and 42 U.S.C. § 1981, both as amended by the Civil Rights Act of 1991 (the "Act").[2] Because the original complaint and the allegedly discriminatory conduct occurred before November 21, 1991, when President Bush signed the Act into law, the court must determine whether the Act is to be applied retroactively.

## DISCUSSION

Determining whether a statute is to be applied retroactively is a matter of statutory construction. *United States v. Kimberlin*, 776 F.2d 1344, 1347 (7th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). Although some courts have deferred ruling on whether the Act should be applied retroactively until such time as the Supreme Court rules on the issue, that Court has implicitly suggested it would rather the circuits flesh out the problem before granting certiorari. *See Hicks v. Brown Gp., Inc.*, — U.S. —, 112 S.Ct. 1255, 117 L.Ed.2d 485 (U.S.1991); *Holland v. First Virginia Banks, Inc.*, — U.S. —, 112 S.Ct. 1152, 117 L.Ed.2d 401 (U.S.1992); *Gersman v. Group Health Assoc., Inc.*, — U.S. —, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992) (all granting certiorari, vacating decision, and remanding the cases so that the circuit court could consider ap-

---

**1.** *See Sofferin v. American Airlines, Inc.*, No. 88 C 9938, minute order at 2 (N.D.Ill. Nov. 12, 1991) (denying American's motion for summary judgment). Plaintiff's amended complaint claims he did tell the pilots he was Jewish. First Amended Complaint, ¶ 20.

**2.** For a more extensive factual and procedural background, see *Sofferin v. American Airlines, Inc.*, 713 F.Supp. 1219 (N.D.Ill.), *recons. denied*, 717 F.Supp. 597 (N.D.Ill.1989), *aff'd in part, rev'd in part*, 923 F.2d 552 (7th Cir.1991).

Presently, the parties have submitted complete briefs only on the issue of whether the Civil Rights Act of 1991 is retroactive. Because of the court's ruling and the absence of thorough briefs, the court will not address the other reasons for dismissal as raised in American's motion.

plicability of the Act). This court will therefore resolve the matter here.[3]

### I. Review of Applicable Law

The Supreme Court has laid down two separate tests to determine whether a statute should be applied retroactively or prospectively in *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) and *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). There is an "apparent tension" between these two decisions, *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990), and Justice Scalia went so far as to call the conflict irreconcilable. *Id.* at 841, 110 S.Ct. at 1579 (Scalia, J., concurring). As the court concludes that the result under either rule is the same, this court analyzes the Act under both rules, in a fashion similar to that employed by the Supreme Court in *Bonjorno,* in reaching its conclusion that the Act should apply prospectively. *See id.* at 837, 110 S.Ct. at 1576.

### A. *Bradley v. School Board of Richmond*

In *Bradley,* parents of several school-age children sought attorneys' fees resulting from protracted desegregation litigation in the Richmond, Virginia school system. The district court awarded fees, despite the absence of a specific statutory grant of power to do so, based on the court's equity power and an analogy to the provision in the Civil Rights Act of 1964 which provided for the award of fees and costs. The school board appealed. After submission, but prior to the rendering of the Fourth Circuit's opinion, 20 U.S.C. § 1617 (1970 ed., Supp. II) was amended to provide for the award of attorney's fees in an appropriate school desegregation case. The *en banc* panel of the Court of Appeals did not consider application of § 1617 to the *Brad-*

ley case as they had previously held that the law applied only to cases filed after its effective date. *Bradley v. School Bd. of Richmond,* 472 F.2d 318, 331 n. 57 (4th Cir.1972) (*en banc*) (citing *Thompson v. School Bd. of City of Newport News,* 472 F.2d 177, 178 (4th Cir.1972)). The appellate court then reversed the trial court's award of fees finding that the invocation of equity to award fees was not proper. *Id.* at 332.

The Supreme Court reversed, holding that the Court of Appeals should have applied § 1617 to *Bradley. Bradley,* 416 U.S. at 724, 94 S.Ct. at 2022. The Court explained that "even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect." *Id.* at 715, 94 S.Ct. at 2018 (citing *Thorpe v. Housing Auth. of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) (expanding on holding of *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801))).[4] Thus, the Court created a presumption that a Congressional enactment was to be applied retroactively to post-judgment decisions pending on appeal. *Id.*

The Court found, however, that the presumption was not absolute and created two exceptions. First, if Congress has stated an intent to have the law be applied prospectively, it must be so applied. *Id.* at 715–16, 94 S.Ct. at 2018. Second, no retroactive effect can be given to a law if such an application would result in "manifest injustice". *Id.* at 716–717, 94 S.Ct. at 2018–19 (citing *Thorpe* and *Schooner Peggy*). "Manifest injustice" is a phrase of art, itself comprised of a three-part test used to determine whether a law should be applied retroactively. That tripartite analysis considers, "(a) the nature and identities of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019.

---

**3.** The court has previously held that the Act is prospectively applicable only. *McCullough v. Consolidated Rail Corp.,* No. 90 C 1226, —— F.Supp. —— (N.D.Ill. March 3, 1992).

**4.** Justice Scalia states that the holding of *Schooner Peggy* and *Thorpe* were misstated by

the Supreme Court in *Bradley* therefore casting some doubt on the validity of its conclusion, especially in light of the long line of Supreme Court authority contrary to *Bradley*'s holding. *Bonjorno,* 494 U.S. at 846–47, 110 S.Ct. at 1581–82 (Scalia, J., concurring).

## B. *Bowen v. Georgetown University Hospital*

Fourteen years later, the Court decided *Bowen v. Georgetown University Hospital.* There, the Secretary of Health and Human Services promulgated an administrative regulation that attempted to retroactively affect the calculation of the "wage-index" for hospitals under the cost reimbursement program of Medicare. The Court was called upon to decide whether Congress (through the Medicare Act) had authorized the Secretary to create and implement regulations retroactively; the Court held no. *Georgetown Hospital,* 488 U.S. at 215, 109 S.Ct. at 475. In so holding, the Court stated:

> Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms. Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant.

*Id.* at 208–09, 109 S.Ct. at 471. (citations omitted).[5]

## C. Seventh Circuit Law

The Seventh Circuit apparently declared its alliance with the *Bradley* interpretation by applying it in *Federal Deposit Ins. Corp. v. Wright,* 942 F.2d 1089, 1095 (7th Cir.1991). In spite of this precedent, the Seventh Circuit has not been entirely consistent in its application of the *Bradley* analysis. For example, *Orrego v. 833 West Buena Joint Venture,* 943 F.2d 730 (7th Cir.1991), was issued two weeks after *Wright* and seemed to apply the *Georgetown Hospital* rule.[6] *See id.* at 736–37. Moreover, *Wright* might properly be construed as being limited to its facts since the opinion clearly states that there would be no prejudice in application of the *Bradley* analysis based on the facts of the case before them. *Wright,* 942 F.2d at 1095 n. 6. Thus, this court views the Seventh Circuit law on the subject as unsettled.[7] However, regardless of which test is followed, this court finds the result is the same under either analysis—prospective application of the Act is required.[8]

## II. *Georgetown Hospital* Analysis

Regardless of which test a court employs, the text must first be examined. *Bonjorno,* 494 U.S. at 837–38, 110 S.Ct. at 1577. If the text clearly indicates prospec-

---

**5.** Justice Scalia has stated that there is no middle ground between these *Bradley* and *Georgetown Hospital. Bonjorno,* 494 U.S. at 841, 110 S.Ct. at 1579 (Scalia, J., concurring). Perhaps not. However, if a court were so inclined, it could hold that *Bradley* were applicable only in cases where the judgment has been rendered but the decision not yet final while *Georgetown Hospital* could apply, logically so, in all other cases.

**6.** The *Orrego* court found that the Act in question expressed no clear indication of retroactive intent (although an agency regulation said the law was retroactive). *Orrego,* 943 F.2d at 736. Nor did legislative history clarify the matter. *Id.* Thus, a *Bradley* analysis would normally require retroactive application of the law. Nevertheless, after citing *Georgetown Hospital,* the court applied the Act prospectively. *Id.*

**7.** The Seventh Circuit has once before been presented with arguments concerning the Act, but ruled those arguments waived. *Partee v. Metropolitan School Dist. of Washington Town-*

*ship,* 954 F.2d 454, 457 n. 1 (7th Cir.1992). No other Circuit has taken a stand on the issue. *See Song v. Ives Lab., Inc.,* 957 F.2d 1041 (2d Cir.1992); *Richmond v. Board of Regents of Univ. of Minnesota,* 957 F.2d 595 (8th Cir.1992); *Patrick v. Miller,* 953 F.2d 1240 (10th Cir.1992) (all refusing to decide the issue).

**8.** In *Littlefield v. McGuffey,* 954 F.2d 1337 (7th Cir.1992), the court again stopped short of an outright declaration of allegiance with *Bradley.* Instead, the court affirmed the trial court's application of present-day law, cited *Bradley,* and found no manifest injustice to be present. *Id.* at 1345.

Several other circuits consider the *Georgetown Hospital* rule is the better reasoned rule. *See, e.g., Simmons v. Lockhart,* 931 F.2d 1226, 1230 (8th Cir.1991); *Alpo Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 963 n. 6 (D.C.Cir. 1990); *DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377, 1389–92 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991).

tive or retroactive application, that is how the courts must apply the law. *Dewsnup v. Timm,* — U.S. —, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (if congressional intent is clear, that must be employed); *United States EPA v. Environmental Waste Control, Inc.,* 917 F.2d 327, 332 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991).

The declared purpose of the Act was to change the course of Civil Rights law by targeting several decisions of the Supreme Court.[9] Yet nowhere in the Act does it specifically state that the Act is to be applied retroactively or prospectively. Some courts, however, construe § 402(b) and § 109(c) as prospective and then use this construction to support a conclusion that the rest of the Act should be applied retroactively since to do otherwise would render the statements in these sections redundant and thus meaningless. *See, e.g., Sanders v. Culinary Workers Union Local No. 226,* 783 F.Supp. 531 (D.Nev.1992).

A second interpretation has more recently developed. Some courts have determined that because the original Act as vetoed by the President contained a specific provision stating that the Act was intended to be retroactive, and because that provision was omitted when the Act was resubmitted to the President, Congress must have meant the new Act to be prospectively applicable because when they intended retroactive application, they so stated. Thus, absent any indication, the Act must be intended to be prospective. *Maddox v. Norwood Clinic, Inc.,* 783 F.Supp. 582 (N.D.Ala.1992); *Johnson v. Rice,* Civ.A. No. 2:85–CV–1318, 1992 WL 16284, 1992

U.S.Dist. LEXIS 830 (S.D.Ohio Jan. 24, 1992). This analysis is particularly forceful because the author of the amendments to the vetoed bill, Senator Murkowski, stated that he believed the Act, as amended, to be prospectively applicable. 137 Cong.Rec. S15,953 (daily ed. Nov. 5, 1991); *see Federal Energy Admin. v. Algonquin SNG, Inc.,* 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976) (statement of sponsor is persuasive). Moreover, although the statements of legislators have little value, when they are consistent with the legislative history of the law, they are more persuasive. *Brock v. Pierce County,* 476 U.S. 253, 263, 106 S.Ct. 1834, 1840, 90 L.Ed.2d 248 (1986). However, this court finds there to be no clear textual guidance upon which this court may rely. Because there is no clear indication to the contrary, *Georgetown Hospital* directs the court to apply the Act prospectively. *Georgetown Hospital,* 488 U.S. at 209, 109 S.Ct. at 471–72.

### III. *Bradley* Analysis

In large measure, the previous discussion regarding the lack of clarity of the text of the Act applies here, but the opposite result is directed. Because the text is unclear, *Bradley* presumes that the Act was intended to be applied retroactively. *Bradley,* 416 U.S. at 715, 94 S.Ct. at 2018. This presumption does not apply when there is clear congressional intent to the contrary or manifest injustice would result.

### A. *Bradley:* Congressional Intent Exception

When the intent of Congress cannot be gleaned from the text of a law, courts often rely on other sources to guide them in a determination of what the intent of Congress was in making the law. *See Illinois EPA v. United States EPA,* 947 F.2d

---

**9.** The targeted cases were all from the 1989 Court: *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132; *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835; *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961; *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733; *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268. *Joyner v. Monier Roof*

*Tile, Inc.,* 784 F.Supp. 872 (S.D.Fla.1992). The law as implemented also specifically exempted certain portions of the *Wards Cove* decision from modification (see comments of Senator Murkowski regarding § 402(b), 137 Cong.Reg. S15,953 (daily ed. Nov. 5, 1991)) and a provision to except *EEOC v. Arabian American Oil Co.,* — U.S. —, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (section 109(c)).

283, 290 (7th Cir.1991) (relying on legislative history of unclear regulation). These other sources include the legislative history of the law, *i.e.* the subcommittee hearings, markup sessions, floor debates, and House and Senate Reports. *Regan v. Wald*, 468 U.S. 222, 238, 104 S.Ct. 3026, 3035, 82 L.Ed.2d 171 (1984). Relying on statements of legislators can be a dangerous proposition and their use should be limited. *Id.* at 237, 104 S.Ct. at 3035; *cf. Continental Can Co. v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund*, 916 F.2d 1154, 1157 (7th Cir.1990) (post-enactment statements of legislators do not "count" in an interpretation of the law). But when as here, Congress has not made its intent clear, the court must look to these items for guidance.

The sponsors of the Act were Senators Kennedy and Danforth. Senator Danforth issued an Interpretive Memorandum in which he and Senator Kennedy agreed on all points discussed except whether the new Act was to be applied retroactively. Senator Danforth said it should be applied prospectively while Senator Kennedy believed it should be applied retroactively. 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991) (statement of Senator Danforth). Senators Chafee, Cohen, Durenberger, Hatfield, Jeffords, and Specter all concurred with Senator Danforth. Senator Dole made statements from the Senate floor in which he sided with prospectivity. 137 Cong.Rec. S15,472–78 (daily ed. Oct. 30, 1991), 137 Cong.Rec. S15,953 (daily ed. Nov. 5, 1991). Additionally, Representative Hyde made a statement that he believed the Act applied prospectively. 137 Cong. Rec. H9,542 (daily ed. Nov. 7, 1991). Nevertheless, several Senators and Representatives also stated that they believed the legislation was to be applied retroactively. From all this it is difficult to discern a clear legislative directive.

When necessary, courts may turn to alternative sources for guidance. *See Securities Indus. Ass'n v. Board of Governors of Federal Reserve Sys.*, 468 U.S. 137, 142, 104 S.Ct. 2979, 2982, 82 L.Ed.2d 107 (1984) (relying on agency interpretation); *see* *also, City of Pleasant Grove v. United States*, 479 U.S. 462, 469, 107 S.Ct. 794, 798, 93 L.Ed.2d 866 (1987) (using attorney general opinion as support for interpretation). In this case there are two sources. First, President Bush issued a statement in which he adopted the October 30 and November 5 statements of Senator Dole (stating the Act was intended to be applied prospectively) as the interpretation which would be employed by the Executive Branch. *President Bush's Statement on Signing the Civil Rights Act of 1991 (S 1745)*, Daily Labor Report (BNA), No. 226, D–1 (Nov. 22, 1991).

Second, the Equal Employment Opportunity Commission has determined that the law should be applied prospectively. *EEOC: Policy Guide on Retroactivity of Civil Rights Act of 1991*, Labor Relations Reporter (BNA), Vol. 8C, No. 688, at 405:6971–75 (Dec. 27, 1991). As the EEOC is the body charged with enforcement of the Act, their interpretation is given more weight in the analysis than other authors merely commenting on the matter. *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 115, 108 S.Ct. 1666, 1671, 100 L.Ed.2d 96 (1988) ("it is axiomatic that the EEOC's interpretation of Title VII, for which it has primary enforcement responsibility, need not be the best one by the grammatical or any other standards. Rather the EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference"); *Martin v. Pav–Saver Mfg. Co.*, 933 F.2d 528, 530 (7th Cir.1991).

All of the above supports the conclusion that the law should be applied prospectively under the *Bradley* analysis's first exception. Although the legislative history and commentary are not entirely clear, several legislators, including one of the bill's sponsors, supported prospective application. When coupled with President Bush's statements and the authoritative memorandum of the EEOC, the requirements of the first *Bradley* exception have been met.

B. *Bradley:* Manifest Injustice Exception

An alternative basis for the prospective application of the Act under *Bradley* is the

manifest injustice exception. When manifest injustice would result from retroactive application of a law, it should be applied prospectively. *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016; *Reliance Ins. Co. v. Zeigler*, 938 F.2d 781, 785 (7th Cir.1991). Manifest injustice encompasses three factors: 1) the nature and identity of the parties, 2) the nature of their rights, and 3) the nature of the impact of the change in the law upon those rights. *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019.

The first factor—the nature and identity of the parties—considers whether the matter at hand is one between private parties (and private concerns) or a public entity (and/or issues of national concern). If the action is private, the court is less likely to apply the law retroactively. *See Bradley*, 416 U.S. at 718–19, 94 S.Ct. at 2019–20. The parties in the instant case are clearly private. Here, as in *In re Busick*, 831 F.2d 745 (7th Cir.1987), "we have what is more accurately described as a 'routine private' dispute as opposed to one involving significant public concern." *Id.* at 748 (quoting *In re Stroop*, 47 B.R. 986, 988 (D.Colo. 1985)).

In general terms, the issues here are of national concern. Indeed, protection of individual civil rights was the purpose behind the Act. However, *Bradley*, which found the issues presented were of public concern, was not an action between mere private individuals. Rather, the Richmond community as a whole received the benefits of a non-discriminatory Richmond school system and thus the first factor in the exception was not met. *Bradley*, 416 U.S. at 718, 94 S.Ct. at 2019. Plaintiff's action here is purely private, benefitting the parties alone. Therefore, even though society as a whole may benefit from the decision in this case, in a real sense the matter is private.

Second, the court must consider whether application of the new law "would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. This is also known as the "vested rights" doctrine. *Kimberlin*, 776 F.2d at 1347. Section 102 of the Act created several rights that under the previous law did not exist. First and most importantly, it gave a party the right to demand a jury trial. Second and third, it gave the plaintiff the right to seek compensatory damages and punitive damages in certain cases. These are substantial new rights and cut toward enforcement of the law prospectively.

Because the Act targeted several Supreme Court decisions for "reversal", many courts have viewed the new Act as remedial—placing parties into the position they were in prior to the decisions of the 1989 Supreme Court.[10] If the Act did nothing more than replace the law into its prior position, the court would have little problem in applying this factor in favor of retroactivity. However, the Act went well beyond the bounds of Supreme Court case-law. Congress added rights and liabilities that were never present in any prior civil rights case. By adding these, Congress destroyed a court's ability to construe the Act as remedial and therefore its retroactive applicability.

That this Act cannot be applied retroactively under the second factor because it is not simply remedial is supported the facts of *Bradley* itself. There, an attorney fee provision provided no new liability on the part of defendants, it only served as a new legal justification for the award of fees. *Bradley*, 416 U.S. at 724, 94 S.Ct. at 2022 (holding proper basis for award of fees). Additionally there, the Court found that the School Board had no right to the funds

**10.** To say that Congress has the power to overrule decisions of the Supreme Court is simply inaccurate. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178, 2 L.Ed. 60 (1803) (Congress cannot add to nor detract from the powers of the courts granted in the Constitution). Equally inaccurate is to say that the Supreme Court promulgates law. Rather, the Supreme Court interprets enactments of Congress. *Id.* at 176.

To the extent that Congress disagrees with the Court's interpretation, Congress may promulgate new law for interpretation by the Court, but may not "overrule" those decisions. *Id.* at 178–80. Prospective application of the Act best preserves the separation of powers of which Justice Marshall spoke. *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 963 n. 6 (D.C.Cir.1990) (Thomas, J.).

it sought to protect as it held those funds in trust for the public. *Id.* Contrarily, if the Act were applied retroactively here, plaintiff would be able to seek different and greater damages from American. The new law creates new liability that could not have been anticipated several years ago when American alleged engaged in the discriminatory conduct. Additionally here, American will lose its own funds of which the public has no claim. The court cannot find that the second factor militates in favor of retroactive application without emasculating the principles laid down in *Bradley*.

The third factor in the manifest injustice exception—what impact the change in law will have on any pre-existing rights—also militates in favor of prospective application. *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020; *Wright*, 942 F.2d at 1096. The main ingredient in this factor is whether the new law creates new and unanticipated obligations on a party without notice or an opportunity to be heard. *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. Here, the Act does create new and substantial rights and liabilities. If American is proven to have committed the discriminatory actions of which plaintiff complains, it could be liable for thousands of dollars in punitive and compensatory damages not previously recoverable, least of all five or six years ago when the alleged activities occurred. Applying such a change to the parties in this case would create substantial liabilities that could not have been anticipated in 1985 and 1986, even by the most visionary. With such a change, prospective application is required.

Consequently, all three factors in the *Bradley* analysis for the manifest injustice exception support a conclusion that the law should be applied prospectively. The parties are an individual and a private corporation although the issue is, in a general sense, of national concern. Congress, in passing the new legislation, created real and substantial new rights for plaintiff and concurrently real and substantial new obligations and liabilities for defendants. The Act as such is not merely remedial. Therefore, it would be manifestly unjust and in contradiction with both the facts and intent of *Bradley* to apply this law retroactively. As a result, both *Bradley* exceptions, legislative history and manifest injustice, are met here and prospective application of the Act is required. So too does *Georgetown Hospital* mandate prospective application.

### IV. Other Caselaw

The case of *Mojica v. Gannett Co.*, 779 F.Supp. 94 (N.D.Ill.1991), reached a different conclusion using the *Bradley* analysis.[11] In reaching its decision, the distinguished judge emphasized that "the prevailing law was consistent with the 1991 Act's amendments to § 1981." *Id.* at 98–99. Thus, the court held that the 1991 Act did nothing to change the rights and liabilities of the parties in that case. *Id.* at 98. *Mojica*, therefore, is very fact-specific regarding the Act; in § 1981 cases the Act is retroactive at least in part because there was no perceived change in the law. *Id.* at 99. Yet the court did not have the benefit of the EEOC's policy statement which may have altered the judge's analysis as their decision, as the body charged with enforcement of the Act, is entitled to deference. However, as plaintiff here attempts to invoke a larger portion of the Act, this court must take a broader perspective than the *Mojica* court was permitted to. To the extent this case speaks to the same issues as *Mojica*, the court disagrees with those conclusions. *See also Graham v. Bodine Elec. Co.*, 782 F.Supp. 74 1992 U.S.Dist. LEXIS 679 (N.D.Ill.1992); *Bristow v. Drake Street, Inc.*, No. 87 C 4412, 1992 WL 14262, 1992 U.S.Dist. LEXIS 499 (N.D.Ill. Jan. 21, 1992) (both holding Act, in some part, is to be applied retroactively). *See also Cary v. CHA*, No. 87 C 6998, 1991 WL 274443, 1991 U.S.Dist. LEXIS 18543 (N.D.Ill. Dec. 16, 1991); *EEOC v. Elgin Teachers Ass'n*, 780 F.Supp. 1195 (N.D.Ill.

---

**11.** The court in *Mojica* relegated *Orrego v. 833 West Buena Joint Venture*, 943 F.2d 730 (7th Cir.1991), to a footnote and distinguished it based on the facts of that case. This court is not so confident that *Orrego* was a fact-based aberration. Consequently this court chose to discuss both tests, as did the Court in *Bonjorno*, in reaching its conclusion.

1991) (both applying provisions retroactively without specifically holding Act retroactive).[12]

Dozens of other district courts have considered the subject and are evenly split on the question. *Van Meter v. Barr*, 778 F.Supp. 83 (D.D.C.1991) was one of the first to hold that the law should be given prospective effect and overruled plaintiff's objections that the law was only a procedural nicety and therefore could easily be applied retroactively. *Id.* at 84; *accord Johnson v. Rice*, Civ. A. No. 2:85–CV–1318, 1992 WL 16284 (S.D.Ohio Jan. 24, 1992). Other examples of cases concluding the Act should have prospective effect are *Thompson v. Johnson & Johnson Mngt. Info. Ctr.*, 783 F.Supp. 893 (D.N.J.1992); *Tyree v. Riley*, 783 F.Supp. 877 (D.N.J. 1992); *Khandelwal v. Compuadd Corp.*, 780 F.Supp. 1077 (E.D.Va.1992); *Sorlucco v. New York City Police Dept.*, 780 F.Supp. 202 (S.D.N.Y.1992); *Hansel v. Public Serv. Co.*, 778 F.Supp. 1126 (D.Colo. 1991). *Cf. Hameister v. Harley–Davidson, Inc.*, 785 F.Supp. 113 (E.D.Wis.1992) (citing *McKnight v. Merrill Lynch*, No. 90–C–597, 1992 WL 74414 (E.D.Wis.1992) (holding damages portion of Act not retroactive). The court is not without support for its conclusion that the law should be applied prospectively.

## CONCLUSION

In sum, this court holds that the Civil Rights Act of 1991 applies prospectively. Therefore, for the foregoing reasons, plaintiff's amended complaint is dismissed and leave is granted to plaintiff to file a complaint consistent with this order if he can do so in good faith.

IT IS SO ORDERED.

---

**12.** American cites this court's decision in *Bracey v. Helene Curtis, Inc.*, 780 F.Supp. 568 (N.D.Ill. 1992), for the proposition that this court has already decided the Act to be retrospective. However, the *Bracey* decision merely stated in a footnote that the Act was not inconsistent with the claims therein presented. The court was not presented with the issue of whether the Act was retroactive and thus any statement regarding the retroactivity is *dicta.*