**Stanton GREENWOOD, Michael Fisher, and Bobby Rideout, Plaintiffs,**

v.

**M.P.W. STONE, Secretary of the Army, Defendant.**

**No. CIV.A. 91–1795.**

United States District Court, W.D. Pennsylvania.

March 23, 1992.

Charles S. Ralston, Marina Hsieh, NAACP Legal Defense & Educ. Fund, Inc., New York City, Kenneth W. Taber, William McCartney, Christy & Viener, New York City, Caroline A. Mitchell, Pittsburgh, PA, for Stanton Greenwood, Michael Fisher.

Caroline A. Mitchell, Pittsburgh, PA, for Marvin J. Booker.

Albert W. Schollaert, U.S. Attorney's Office, Pittsburgh, PA, for M.P.W. Stone.

### REPORT

LANCASTER, United States Magistrate Judge

On October 18, 1991, plaintiffs filed this civil action alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Before the court is defendant's motion to dismiss plaintiffs' amended complaint, filed on No-

vember 19, 1991. The amended complaint seeks to incorporate the expanded rights and remedies provided by the Civil Rights Act of 1991. P.L. 102–166 ("1991 Act" or "Act"). The effective date of the 1991 Act is November 21, 1991. Therefore, the issue to be resolved here is whether the provisions of the 1991 Act should be applied retroactively to the facts of this case. For the reasons set forth herein, defendant's motion should be denied.

## I.

### A.

The Civil Rights Act of 1991 is a comprehensive bill intended to expand certain remedies available to victims of discrimination and to undo the effects of recent Supreme Court decisions, which had the effect of limiting remedies for civil rights violations.[1] The provisions of the 1991 Act from which plaintiffs seek to benefit are found in section 101, see n. 2 *infra*, and in section 102 which authorizes compensatory and punitive damages in Title VII intentional discrimination cases, as well as the right to a jury trial where such damages are sought and are not available to the claimant under the Civil Rights Act of 1872, 42 U.S.C. § 1981.

Whether the provisions of the 1991 Act are to be applied retroactively to those cases pending as of its effective date is a matter of considerable controversy. The district courts that have addressed the issue are divided as to its retroactive effect. In fact, there exists a split of opinion within the District Court for the Western District of Pennsylvania on the issue. *See Sinnovich v. Port Authority*, (Civil Action No. 88–1524, filed 12/31/91) (provisions are not retroactive to pending case) (Standish, D.J.); *compare*, *Wittman v. New England Mut. Life Ins. Co.*, (Civil Action No. 90–1688, filed 2/10/92) (1991 Act to be applied to pending action) (Diamond, D.J.). For the reasons set forth herein, we conclude that the provisions of the 1991 Act should be applied retroactively to the instant case.

### B.

In *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court addressed the issue of whether an attorney's fee statute that went into effect during the pendency of an appeal was to be applied by the appellate court. Relying on *Thorpe v. Durham Housing Authority*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), the Court held that there exists a presumption in law that "a court is to apply the law in effect at the time it renders its decision." 416 U.S. at 711, 94 S.Ct. 2006. The *Bradley* Court recognized two exceptions to the presumption. The presumption does not govern where retrospective application would result in a mani-

---

**1.** Section 101 reverses the limitations imposed on the scope of 42 U.S.C. § 1981 by the Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Section 105 codifies the pre-*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), "business necessity" and "job related" standards. Section 107 reverses the liability limitations imposed on mixed motive cases by the decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The collateral challenge holdings of *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct.

2180, 104 L.Ed.2d 835 (1989), and *Lorance v. AT & T*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), are reversed by sections 108 and 112 respectively. Section 109 reversed *EEOC v. Arabian American Oil Co. & Aramco Services Co.*, 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), by mandating that Title VII applies to U.S. companies operating outside of the territorial jurisdiction of the United States. The $30.00 expert witness fee limitation imposed by the Supreme Court in *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), is reversed by section 113.

fest injustice to one of the parties. Similarly, the presumption does not apply where there is clearly expressed congressional intent to the contrary. *Id.*

Subsequent to *Bradley,* the Supreme Court decided *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). There it stated, "[r]etroactivity is not favored in the law.... [C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. 468. However, *Bowen* did not explicitly overrule *Bradley.* Recently, in *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 836–38, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the Supreme Court acknowledged, without resolving, the ongoing "tension" between the two cases.[2]

The *Bradley/Bowen* conflict is a matter of confusion among the circuits. Yet, a review of case law reveals that the Court of Appeals for the Third Circuit has consistently applied the *Bradley* rule when faced with this conflict. *See, i.e., Bonjorno v. Kaiser Aluminum,* 865 F.2d 566 (3d Cir.1989); *United States v. Jacobs,* 919 F.2d 10 (3d Cir.1990), *cert. denied,* 499 U.S. 930, 111 S.Ct. 1333, 113 L.Ed.2d 265 (1991); *Air–Shields, Inc. v. Fullam,* 891 F.2d 63, 65 (3d Cir.1989); *U.S. Healthcare, Inc. v. Blue Cross of Philadelphia,* 898 F.2d 914 (3d Cir.1990), *cert. denied,* 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990).

The district courts of this circuit have also consistently followed the *Bradley* rule. *See United States v. Youngstown Steel Corp.,* 1989 WL 106514, 1989 U.S. Dist. LEXIS 4564 (W.D.Pa. March 22, 1989) (

applied the *Bradley* analysis in determining that amendments changing damages recoverable under the False Claims Act, 31 U.S.C. §§ 3729–3731, may be applied to conduct occurring prior to enactment of the amendments). *See also United States v. Board of Education,* 697 F.Supp. 167 (D.N.J.1988) (same). In *American Trade Partners v. A–1 International Importing Enterprises, Ltd.,* 757 F.Supp. 545, 557 (E.D.Pa.1991), the court relied on the *Bradley* rule to apply amended venue provision to a pending action.

Relying principally on *Davis v. Omitowoju,* 883 F.2d 1155 (3d Cir.1989), defendant argues that Third Circuit precedent no longer favors the *Bradley* presumption. In *Davis,* the court did not refer to either *Bradley* or *Bowen* but merely stated that it agreed with the canon that newly enacted statutes operate prospectively. But, the court also noted that that rule is generally applied "only when application of the new law would affect rights or obligations existing prior to the change in law." *Id.* at 1170.

Defendant contends that such language is an indication that *Bradley* is no longer the rule of the Third Circuit. However, we do not read *Davis* so broadly. The question of whether or in what manner a newly enacted statute affects prior existing rights is, as seen below, one of the considerations in determining whether a retroactive application would constitute a "manifest injustice" under a *Bradley* analysis. Thus, we do not consider *Davis* as a clear departure from the line of Third Circuit cases favoring a *Bradley* analysis.

We have considered all of defendant's arguments regarding the *Bradley/Bowen*

---

**2.** *Kaiser Aluminum v. Bonjorno* emanated out of this circuit. Our Court of Appeals relied on a *Bradley* analysis in its decision. In reversing that decision, the Supreme Court did not rule that the Court of Appeals for the

Third Circuit had erred in relying on a *Bradley,* rather than a *Bowman* analysis, but found that the congressional intent clearly prohibited retroactive application under either analysis in that case.

conflict and conclude that although defendant's arguments in this regard are not frivolous, the weight of authority is that *Bradley* is the law of this circuit. Accordingly, we address defendant's motion in light of the principles set forth therein.[3]

## C.

We first address the question of whether there is a clearly expressed Congressional intent not to retroactively apply the 1991 Act to pending cases. Two methods are recognized for determining congressional intent with respect to legislation. The first is to examine the language of the legislation itself and thereby ascertain its plain meaning. The second, and less favored method, is to review the legislative history to see what various legislators had in mind at the time of casting their votes.

Both parties here have referred us to certain provisions of the 1991 Act which they contend are dispositive of the issue. However, our review shows that the provisions, read as a whole, are—at minimum—susceptible to conflicting interpretation. We do not want to appear to have glossed over this aspect of the analysis, because we have not. However, it would serve no purpose to dwell on it either. We concur with the several district courts that have done an in-depth analysis of the language contained in the 1991 Act that legislative intent on the issue of retroactivity is simply ambiguous.[4]

Therefore, although persuasive arguments can be and have been raised by both parties in an attempt to demonstrate in the Act a clear manifestation of legislative intent, we find such arguments nondispositive of the issue. This is not surprising. If Congress itself had a clearly defined notion of whether the Act was or was not to be applied to pending cases, language could have been used to express such an intent, and this controversy would not exist regardless of whether a *Bradley* or *Bowen* analysis were employed.

Similarly, we have reviewed in this, and in other cases before this court, as well as in the opinions of several district courts, the text from the Congressional Record containing contradictory verbatim excerpts

---

3. The circuits remain divided in choosing among the *Bradley* and *Bowen* presumptions regarding retroactivity as it relates to the 1991 Act. In circuits where the *Bowen* presumption against retroactivity has been adopted, district courts generally have rejected retroactive application of the 1991 Act to cases pending on the date of enactment. *Van Meter v. Barr*, 778 F.Supp. 83 (D.D.C.1991); *Hansel v. Public Service Co. of Colo.*, 778 F.Supp. 1126 (D.Colo.1991); *see also Sorlucco v. New York City Police Dep't*, 780 F.Supp. 202 (S.D.N.Y.1992) (precluding retroactive application to a case that had been tried prior to enactment under a narrow reading of *Bradley*). In circuits where the *Bradley* presumption of retroactivity is controlling, district courts have applied the 1991 Act retroactively. *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302 (N.D.Cal.1992); *King v. Shelby Medical Center*, 779 F.Supp. 157 (N.D.Ala.1991); *Mojica v. Gannett Co.*, 779 F.Supp. 94 (N.D.Ill. 1991) (relying upon the Seventh Circuit's precedent).

4. Typical of this ambiguity is that in 1990, Congress passed a revised Civil Rights Act which did not survive a presidential veto. Section 15 of that version provided for retroactive application of many of its provisions to a specific date in 1989. Advocates of non-retroactivity argue that the absence of these provisions from the 1991 Act indicates that Congress did not intend retroactive application. While this factual background could possibly support such an inference, there are many more just as likely inferences which could be drawn from these facts. For example, Congress could have intended no cut-off date on retroactivity. Further, section 15 also contained language which would have vacated final orders entered prior to its enactment. It is not difficult to imagine a general outcry against such a provision. The court finds no guidance in viewing the language of the 1990 Act. We are better advised to pay attention to the Act before us.

from the various senators involved in the legislative process. Again, our review establishes that the court cannot determine legislative intent from these contradictory and politically polarized statements without engaging in sheer speculation.

Thus, because Congressional intent is unclear, under *Bradley,* · we must afford retroactive application of the 1991 Act unless we determine that its application would constitute a "manifest injustice."

### III.

### A.

In *Bradley,* the court articulated three factors to examine in determining whether application of a new statute to a pending case would result in "manifest injustice." The first relevant consideration is "the nature and identity of the parties." The greatest danger of "manifest injustice" arising from the retroactive application of an intervening statute occurs in "mere private cases between individuals." A court is less inclined to apply the statute retroactively in such instances. *See Bradley,* 416 U.S. at 717, 94 S.Ct. 2006. By contrast, a court is more likely to apply a statute retroactively when it has to do with a "great national concern." *Id.* at 719, 94 S.Ct. 2006.

It cannot be seriously questioned that an act involving clarification of the nation's civil rights laws and the procedures and remedies available for enforcing those laws, implicates "great national concerns." *See, i.e., Mojica v. Gannett,* 779 F.Supp. at 98.

The second consideration has to do with the nature of the rights, if any, affected by the intervening statute. A statute affecting the substantive rights and liabilities of the parties is presumed to have only prospective application. *See Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985). It

will not be applied retroactively when to do so would infringe upon or deprive either party of a right that had matured or become unconditional prior to enactment. *See Bradley,* 416 U.S. at 720, 94 S.Ct. 2006.

The rights at issue here are not. new. The Civil Rights Act of 1964 guaranteed a person's right in his or her place of employment to be free from discrimination on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2. Here, we are concerned with new remedies for violations of these existing rights.

Finally, the third consideration has to do with the nature or impact of the change in the statute upon the existing rights of the parties. *Id.* at 717, 94 S.Ct. 2006. The focus here is on whether new and unanticipated obligations and duties may be imposed upon a party without prior notice or opportunity to be heard. *See id.* at 720, 94 S.Ct. 2006. In this respect, defendant impresses upon the court the egregiousness of it now being subject to jury trial and compensatory damages for employment discrimination claims. This is, of course, a new obligation. The defendant by virtue of it being the federal government, is different from a private employer who, even prior to the 1991 Act, was subject to jury trial and compensatory damages for certain employment discrimination claims under 42 U.S.C. § 1981. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

However, we do not feel this distinction is necessarily dispositive. For the court in *Bradley* made clear that whether a manifest injustice occurred is not merely a question of whether new and unanticipated obligations may be imposed upon a party, it is whether such obligations have been imposed "without notice or an opportunity to be heard." *Bradley,* 416 U.S. at 720, 94 S.Ct. 2006. In this instance, it is pure

sophistry to contend that the federal government has not had such an opportunity to be heard when those new obligations are a result of an act of Congress. Restated, a private employer has no control over Congressional acts which may create changes in its obligations. However, here the federal government is that which has created the change. Therefore, it clearly has had an opportunity to be heard on the issue.

Moreover, despite defendant's protestations to the contrary, that the federal government may be subject to a jury trial and compensatory damages, albeit not in an employment situation, but nonetheless for violation of a citizen's civil rights, is not such a radical concept that a manifest injustice has inherently occurred. *See Bivens v. 6 Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Therefore, we conclude that the retroactive application of the 1991 Act in this case will not constitute a manifest injustice against the defendant.

### B.

■ On December 27, 1991 the Equal Employment Opportunity Commission ("EEOC") issued a policy statement on this issue. The EEOC took the position that the 1991 Act does not apply to pending cases or to conduct that occurred prior to November 21, 1991. As a general rule, the opinion of the administrative agency chargeable with implementing Congressional acts is entitled to deference. *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, EEOC's policy statement is expressly based on a *Bowen* analysis. For the reasons stated *infra*, we have concluded that the Third Circuit follows the *Bradley* analysis. Therefore, we are not bound by the EEOC's policy statement.

### C.

■ Finally, we address defendant's additional argument that should the court determine that the 1991 Act is to be applied retroactively to pending cases generally, the doctrine of sovereign immunity precludes its application in cases where the defendant is the United States Government.

Title VII of the Civil Rights Act of 1964, as originally enacted, did not cover employees of the federal government. Congress remedied that omission in 1972 by the addition of section 717 to Title VII, 42 U.S.C. § 2000e–16, making clear that federal government employees are protected by Title VII. Defendant contends, and its authorities support, that a waiver of sovereign immunity must be express rather than implied. According to the defendant, the 1972 amendment expressly waived the government's immunity only with respect to the equitable and remedial scheme then available under Title VII, not for the jury trial and compensatory damages now available under the 1991 Act.

We need not dwell on this argument. Analogous sovereign immunity arguments were raised by the federal government in an attempt to forestall retroactive application in the aftermath of the 1972 amendment. Those arguments were rejected by the Courts of Appeal in the Second, Third, Fourth and District of Columbia circuits. *See Sperling v. United States*, 515 F.2d 465, 473 (3d Cir.1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976), and authorities cited therein. Only the Sixth Circuit found the sovereign immunity argument valid in *Place v. Weinberger*, 497 F.2d 412 (6th Cir.1974), *vacated*, 426 U.S. 932, 96 S.Ct. 2643, 49 L.Ed.2d 383 (1976). However, on appeal to the United States Supreme Court, the Supreme Court vacated the decision of the Sixth Circuit, and remanded it for further

consideration in light of *Brown v. General Services Administration*, 425 U.S. 820, 824 n. 4, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In *Brown,* the Court noted, without holding, that other courts had applied the amendment retroactivity. Thereafter, apparently the government dropped its position in *Place v. Weinberger.* We believe that defendant's claim that sovereign immunity prohibits a retroactive application of the 1991 Act is without merit.

## IV.

Based on all of the preceding, the 1991 Act should be applied to this case. Accordingly, defendant's motion to dismiss the amended complaint should be denied.