Rolando ORREGO, Nikolaos Iakovos, Nurul Chowdhury, Leonie Amaker and Marta Mendez, individually and on Behalf of all other persons similarly situated, Plaintiffs–Appellees,

v.

833 WEST BUENA JOINT VENTURE, Town Management Corporation and American National Bank and Trust Company of Chicago, Defendants–Appellants.

No. 89–2271.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1990.

Decided Sept. 13, 1991.

Leslie A. Jones, Johnson, Schaaf, Jones & Snelling, William P. Wilen (argued), Legal Assistance Foundation of Chicago, Edward W. Feldman, Miller, Shakman, Nathan & Hamilton, Chicago, Ill., for plaintiffs-appellees.

Linda A. Wawzenski, Asst. U.S. Atty., Shalom L. Kohn, William F. Lloyd, Sidley & Austin, Ronald Butler, Kevin J. O'Brien, James I. Rubin (argued), Ellen M. Babbitt, Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, Chicago, Ill., Michael J. Singer, John S. Koppel (argued), Dept. of Justice, Civil Div., Appellate Section, Washington, D.C., Alan R. Dolinko, Chuhak & Tecson, Chicago, Ill., for defendants-appellants.

Linda A. Wawzenski, Asst. U.S. Atty., Chicago, Ill., for Department of Housing and Urban Development and Samuel R. Pierce, Jr.

Before COFFEY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Defendants (referred to collectively as Joint Venture) are the owner, managing agent, and trustee/mortgagor of a federally assisted apartment building in Chicago. Joint Venture appeals the district court's grant of summary judgment on behalf of a class of tenants (referred to collectively as the West Buena Tenants). The district court held that a federal statute retroactively prohibited Joint Venture from prepaying its mortgage and thus ending federal regulation of the building. For the following reasons, we reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.

# I

# BACKGROUND

A. *Statutory and Regulatory Background*

This case involves the rights of the owners of a federally assisted but privately owned "(d)(3)" apartment building. *See* 12 U.S.C. § 1715*l* (d)(3). The statute provides that a developer and federal housing officials may enter into a "regulatory agreement" regarding future rents and "methods of operation." *Id.* Following construction, a government agency would purchase the existing mortgage and note and would give the developer a below-market forty-year mortgage. During the life of the mortgage, the Department of Housing and Urban Development (HUD) regulates rents and limits the profits of owners of (d)(3) buildings. *See* 24 C.F.R. §§ 221.529, 221.532(a) (1987). However, until recently, regulations and contractual agreements permitted (d)(3) owners to prepay their

mortgages after twenty years and thus terminate HUD regulation. *See id.* § 221.-524(a)(ii).

Enactment of the Emergency Low Income Housing Preservation Act of 1987 (ELIHPA or the 1988 Act), Pub.L. No. 100–242, tit. II, 101 Stat. 1815, 1877 (1988), significantly restricted an owner's right to prepay. Congress found that a large number of federally assisted units could be lost due to prepayment over the next fifteen years. *See id.* § 202(a)(1), 101 Stat. at 1877. The statute notes that "interim measures are needed to avoid the irreplaceable loss of low income housing" while a review of housing programs continues. *Id.* § 202(a)(10), 101 Stat. at 1878. ELIHPA requires owners to file a notice of intent and to receive approval of the Secretary of HUD before prepaying. *Id.* §§ 221(a), 222, 101 Stat. at 1878–79. The Secretary may approve prepayment only upon a written finding that prepayment would not materially affect current residents or the local supply of low income housing. *Id.* § 225(a), 101 Stat. at 1880. The statute required the Secretary to issue implementing regulations, which were "to take effect not later than 45 days after the date on which the regulations are issued." *Id.* § 234, 101 Stat. at 1886. The "Effective Date" section of subtitle B provides that "[t]he requirements of this subtitle shall apply to any project that is eligible low income housing on or after November 1, 1987." [1] *Id.* § 235, 101 Stat. at 1886.

The effective date provision first appeared in the bill when it emerged from conference on November 6, 1987. Both the House and Senate approved amended versions that left section 235 unchanged. The final version of ELIHPA was approved by both houses on December 21, 1987, but was not signed into law by the President until February 5, 1988.

Two months later, HUD issued interim regulations authorized by section 234 of ELIHPA. *See* 53 Fed.Reg. 11,224 (Apr. 5, 1988). HUD indicated its view that, despite the language of section 235, Congress had not authorized rescission of a prepayment made between November 1, 1987 and February 5, 1988: "There is no evidence in the 1987 Act's legislative history that Congress intended such a result, and the Department's position is that the statute should not be so construed." [2] *Id.* at 11,-225; *see also* 24 C.F.R. § 248.103 (1990).

## B. *Facts*

The apartment building at 833 West Buena was constructed as a (d)(3) building. The forty-year note involved in this case expressly provided for optional prepayment after twenty years. On October 22, 1987, Joint Venture first notified federal officials that it intended to exercise its prepayment option. Joint Venture later tendered its

---

1. ELIHPA also provides in relevant part:
   For purposes of this subtitle:
   (1) The term "eligible low income housing" means any housing financed by a loan or mortgage—
   (A) that is—
   (i) insured or held by the Secretary under section 221(d)(3) of the National Housing Act and assisted under section 101 of the Housing and Urban Development Act of 1965 or section 8 of the United States Housing Act of 1937;
   (ii) insured or held by the Secretary and bears interest at a rate determined under the proviso of section 221(d)(5) of the National Housing Act;
   (iii) insured, assisted, or held by the Secretary under section 236 of the National Housing Act; or
   (iv) held by the Secretary and formerly insured under a program referred to in clause (i), (ii), or (iii); and

   (B) that, under regulation or contract in effect before the date of the enactment of this Act, is or will within 1 year become eligible for prepayment without prior approval of the Secretary.
   Pub.L. No. 100–242, tit. II, § 233(1), 101 Stat. 1877, 1885 (1988).

2. HUD originally was one of the defendants in this action. In the district court proceedings, HUD argued that ELIHPA did not have retroactive effect. HUD appeared as an appellee in this court to defend the district court's holdings that ELIHPA is not unconstitutional. It took no position on retroactivity. Subsequent to oral argument, HUD issued final regulations that reversed its position on this matter. *See* 55 Fed.Reg. 38,944, 38,952 (Sept. 21, 1990). HUD indicated that the new position reflected the government's decision not to seek reversal of the district court's holding in this case regarding the effective date. *Id.* at 38,945.

prepayment, which was accepted by HUD officials on January 4, 1988—after Congress passed ELIHPA, but before the President signed it into law. In late January, Joint Venture sent rent increase and eviction notices to the West Buena Tenants. This suit followed.

## C. *The District Court Proceedings*

The West Buena Tenants claimed that section 235 of ELIHPA manifested congressional intent to make the prepayment restrictions retroactive to November 1, 1987, and they thus sought to void the prepayment.[3] The district court rejected HUD's contention "that retroactive application of the law would produce absurd results: it would require regulation of housing that was deregulated, force HUD to undo a complicated set of transactions ..., and discourage future investment by the private sector in the (d)(3) program." *Orrego v. United States Dep't of Housing and Urban Dev.*, 701 F.Supp. 1384, 1394 (N.D.Ill.1988). Rather, the court reasoned, retroactive application of the prepayment restrictions would satisfy ELIHPA's "primary purpose to preserve the status quo of (d)(3) housing in the face of impending prepayments." *Id.* The court concluded that there was no reason to defer to HUD's interpretation because it "directly conflicts with the express intent of Congress."[4] *Id.* (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 445–48, 107 S.Ct. 1207, 1220–22, 94 L.Ed.2d 434 (1987); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)).

The district court next rejected a series of constitutional challenges raised by Joint Venture. It held that ELIHPA did not fail

to provide substantive due process and that it did not effect an unconstitutional taking of private property for public use without just compensation. *Id.* at 1395–97. The court also rejected Joint Venture's contention that retroactive application of the statute violated the due process clause. *Id.* at 1397–98. The court therefore granted the West Buena Tenants' motion for summary judgment, voided HUD's acceptance of the prepayment, and ordered HUD to resume (d)(3) regulation over 833 West Buena. *Id.* at 1399–1400.

Additional memorandum opinions followed in response to cross-motions for posttrial relief. Both Joint Venture and the West Buena Tenants filed Rule 59(e) motions to alter or amend the judgment, and Joint Venture filed a Rule 62(c) motion to stay the judgment pending appeal. In denying the Rule 59(e) motions and conditionally granting the Rule 62(c) motion, the district court expressly requested counsel for the West Buena Tenants "to submit a draft final order." Mem. op. of Apr. 5, 1989 at 10, 1989 WL 36207. The court later issued an order that specified the relief granted. Order of June 14, 1989. Joint Venture then filed a notice of appeal on June 16, 1989.

ELIHPA's limitations on prepayment rights originally were supposed to terminate two years after enactment. *See* ELIHPA, § 203(a), 101 Stat. at 1878. However, Congress extended the provisions several times and, subsequent to both the district court proceedings and oral argument in this case, amended ELIHPA and made the amended limitations permanent. *See* Low–Income Housing Preservation and Resident Homeownership Act of 1990, Pub.L. No. 101–625, tit. VI, subtit. A, 104 Stat. 4249. We examine *infra* the effects

---

**3.** The West Buena Tenants also claimed that the prepayment was premature by one day. This claim was rejected by the district court. *See Orrego v. United States Dep't of Housing and Urban Dev.*, 701 F.Supp. 1384, 1389–90 (N.D.Ill. 1988). That holding is not an issue in this appeal. Nor do the parties challenge in this appeal the district court's certification of the plaintiff class. *See id.* at 1393.

**4.** Although acknowledging that the legislative history was silent on congressional intent re-

garding retroactivity, *see* 701 F.Supp. at 1394, the court pointed to a letter written by several legislators to HUD Secretary Pierce that criticized the agency's interpretation of the effective date provision. The court noted, "[p]ost-legislation legislative history should be and generally is viewed with some caution. The letter's characterization of congressional intent is, however, wholly consistent with the intent indicated by the plain wording of the statute...." *Id.* at 1394 n. 14.

of these subsequent legislative developments on the issues raised in this appeal.

## II

## ANALYSIS

### A. *Jurisdiction*

██ The West Buena Tenants contend that this appeal must be dismissed for want of jurisdiction because Joint Venture failed to file its notice of appeal within sixty days of the April 5, 1989 entry of the order denying the Rule 59(e) motions.[5] We cannot agree. As the Supreme Court has noted, "[f]ederal appellate jurisdiction generally depends on the existence of a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). This court has dismissed appeals for want of jurisdiction when the district court has failed to "set forth the relief to which the prevailing party is entitled or the fact that the plaintiff has been denied all relief." *Reytblatt v. Denton*, 812 F.2d 1042, 1044 (7th Cir.1987) (per curiam).[6]

It is clear in this case that neither the district court nor the parties believed that the April 5, 1989 order was final. First, the court requested the plaintiffs' counsel to draft a *"final* order." Mem. op. of Apr. 5, 1989 at 10 (emphasis supplied). Counsel for the West Buena Tenants then drafted a proposed order, received comments from counsel for Joint Venture and for HUD, and "incorporated many of these comments into the proposed final order." R. 121 at 2. On June 1, 1989, the West Buena Tenants filed a Motion to Enter Order Implementing the Court's April 5, 1989 Memorandum Opinion. The June 14, 1989 order actually entered by the district court closely tracked "the proposed final order" submitted by the plaintiffs. Using language that is not materially different from that proposed by the plaintiffs, the court indicated that its June 14 order was a response to both the Rule 62 stay motion and the Rule 59 motions to alter and amend the judgment. Viewed realistically, the scope of relief granted by the district court was not clear—and thus judgment was not final— until the district court issued its June 14 order. Joint Venture thus timely filed its notice of appeal on June 16, and this court has jurisdiction over this appeal.

### B. *Statutory Construction*

#### 1. The 1988 Act

██ Courts construing congressional language must begin with the statutory language itself. Whether we examine only the wording of an unambiguous statute or consider other evidence when the meaning is not clear, our task remains the same—to determine the will of Congress and to apply it. *See NuPulse, Inc. v. Schlueter Co.*, 853 F.2d 545, 550 (7th Cir.1988). "As a general rule, when statutory language is plain, there is no cause to examine other indicia of legislative intent." *Id.* at 548. Nonetheless, in this case, we cannot look only at the effective date section itself. "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988). We also must recognize that the Supreme Court has made clear that, although Congress has power to

---

**5.** *See* Fed.R.App.P. 4(a)(1) (in cases in which federal agency is a party, any party may file notice of appeal within 60 days); Fed.R.App.P. 4(a)(4) (tolling appeal while Rule 59 motion is pending).

**6.** *See also Foremost Sales Promotions, Inc. v. Director, Bureau of Alcohol, Tobacco & Firearms*, 812 F.2d 1044 (7th Cir.1987) (per curiam); *cf. Peters v. Welsh Dev. Agency*, 920 F.2d 438 (7th Cir.1990) (appeal dismissed because district court had granted motion to dismiss conditionally but had indicated that complaint would be reinstated if plaintiff met conditions); *Cleaver v. Elias*, 852 F.2d 266 (7th Cir.1988) (appeal dismissed and sanctions imposed on attorney who filed appeal even though district court had required parties to appear to discuss amount of relief).

legislate retroactively, courts are not to assume retroactive application lightly:

"[T]he first rule of construction is that legislation must be considered as addressed to the future, not to the past.... [A] retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.'" *Union Pacific R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913) (citations omitted).

*United States v. Security Indus. Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result"); *Bennett v. New Jersey*, 470 U.S. 632, 641, 105 S.Ct. 1555, 1561, 84 L.Ed.2d 572 (1985) (courts are to presume statutes affecting substantive rights and liabilities apply only prospectively "absent a clear indication to the contrary in the relevant statutes or legislative history"). As this court has noted, "[t]his rule is even more appropriate when the statute affects vested rights." *United States v. Kairys*, 782 F.2d 1374, 1381 (7th Cir.), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986).

We do not find section 235 of ELIHPA, when read in the context of the entire statute, so clear as to support the conclusion that Congress intended it to apply retroactively. The November 1, 1987 date in section 235 arguably only identifies those buildings to which the statute "shall apply"—prospectively—from the date of enactment. Once a (d)(3) building owner legally prepaid prior to February 5, 1988, the building would not appear to satisfy the literal terms of the statute's definition of "'eligible low income housing[,]'" for

the mortgage would no longer be "insured or held by the Secretary." Pub.L. No. 100–242, tit. II, § 233(1), 101 Stat. 1877, 1885 (1988). Nor is the building one that "under regulation or contract in effect *before the date of the enactment* of this Act, *is or will* within 1 year become eligible for prepayment without prior approval." *Id.* § 233(1)(B), 101 Stat. at 1885 (emphasis supplied). Arguably, because the building was no longer in the program on the date of enactment, the building was not one eligible for prepayment within the following year. Moreover, the statute itself gives no indication how HUD was to reregulate former (d)(3) projects whose owners had taken advantage of their right to prepay after November 1, 1987 but before the President signed ELIHPA into law.

We also find it significant that, as the district court recognized,[7] there is no express indication in the legislative history of congressional intent to make this program retroactive. Because ELIHPA was developed and debated over many months, it seems likely that Congress at some point would have directly addressed the retroactivity question had it intended to authorize the retroactive termination of a vested right. Congress certainly knows how to draft a statute with unambiguous retroactive application. For example, when Congress wished to make amendments affecting multiemployer pension plans retroactive, the legislation expressly stated that the relevant provision "takes effect on April 29, 1980," approximately five months before passage of the law. Multiemployer Pension Plan Amendments Act of 1980, Pub.L. No. 96–364, sec. 108(c)(1), § 4402(e)(2)(A), 94 Stat. 1208, 1267; *see Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) (rejecting constitutional challenge to retroactive application of these amendments because both language and legislative history clearly indicated intent to apply retroactively).[8]

---

7. *See Orrego v. United States Dep't of Housing and Urban Dev.*, 701 F.Supp. 1384, 1394 (N.D.Ill. 1988) (noting lack of "pertinent legislative history on the Act's retroactivity").

8. Shortly after the Supreme Court's decision in *Pension Benefit*, Congress amended the statute to eliminate the retroactive application of the relevant provision. *See* Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 558(a)(1), 98 Stat.

■■ Although HUD's final regulations indicate that ELIHPA is to apply retroactively, that position was adopted only after HUD lost in the district court on this issue. *See supra* note 2. The agency has provided no other rationale for changing its well-reasoned interim regulation. Although courts generally defer to the views of agencies entrusted with implementing complex federal statutes, "[t]he degree of deference … depends on the thoroughness, validity, and consistency of the agency's reasoning." *United States v. Markgraf,* 736 F.2d 1179, 1184 (7th Cir.1984) (citing *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 37, 102 S.Ct. 38, 45, 70 L.Ed.2d 23 (1981)), *cert. dismissed,* 469 U.S. 1199 (1985). HUD's post-litigation turnaround certainly displays no thorough analysis or consistency, and we see no need to defer to its new position.[9] As the Supreme Court has noted, "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 213, 109 S.Ct. 468, 474, 102 L.Ed.2d 493 (1988). Furthermore, just as courts must not lightly presume retroactive application of a statute, they also must not lightly presume that Congress has granted an agency authority "to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.* at 208, 109 S.Ct. at 471. We find no unambiguous grant of such power in ELIHPA.

2. The 1990 Act

■ We now turn to the recently enacted Low–Income Housing Preservation and Resident Homeownership Act of 1990 (LIHPRHA or the 1990 Act), Pub.L. No. 101–625, tit. VI, subtit. A, 104 Stat. 4249 (Nov. 28, 1990). The 1990 Act amends ELIHPA to provide expanded options for the owner of (d)(3) housing who desires to transfer ownership to a "qualified purchaser" with federal assistance. *Id.* sec. 601, § 220, 104 Stat. at 4257–59. Inability to transfer to a "qualified purchaser" may permit prepayment. *Id.* sec. 601, § 224(a)(2), 104 Stat. at 4266. An owner previously subject to ELIHPA was able to remain subject to the old Act by filing a declaration to that effect. *Id.* sec. 604(a), 104 Stat. at 4277. We are advised that the defendants filed no such declaration prior to the statutory deadline. We are aware that, as a general rule, a court applies the law in effect at the time of decision. *See Bradley v. Richmond School Bd.,* 416 U.S. 696, 711–16, 94 S.Ct. 2006, 2016–19, 40 L.Ed.2d 476 (1974).[10] We also realize that, in some circumstances, it is advisable for an appellate court to remand a case for further proceedings at the trial level when new legislative enactments affect ultimate disposition of the case. *See generally Fusari v. Steinberg,* 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975). Nevertheless, because both acts must be examined to resolve the case before us, the more prudent course is to address both statutes here.

■■ While we are well aware of the dangers in looking to subsequent legislative enactments to determine the meaning of an earlier statute, we believe that such a course is permissible and indeed advisable here. *Cf. Heckler v. Turner,* 470 U.S. 184, 209, 105 S.Ct. 1138, 1151, 84 L.Ed.2d 138 (1985) ("We take great care, of course, before relying on the understandings of

494, 899; *Long Island Oil Prods. Co. v. Local 553 Pension Fund,* 775 F.2d 24, 26 (2d Cir.1985).

**9.** Similarly, we see no need to defer to the post-enactment views of individual legislators regarding legislative intent, such as the views noted in the district court opinion. *See supra* note 4; *cf. Pierce v. Underwood,* 487 U.S. 552, 566, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (courts need not defer to post-enactment views of House committee); *United States v. Marshall,* 908 F.2d 1312, 1318 (7th Cir.1990) (en banc)

("subsequent debates are not a ground for avoiding the import of enactments"), *aff'd sub nom. Chapman v. United States,* — U.S. —, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

**10.** However, as the *Bradley* Court itself made clear, "[t]he Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional." 416 U.S. at 720, 94 S.Ct. at 2020.

Members of a subsequent Congress as to the actions of an earlier one, but we by no means eschew what guidance they offer."). The 1990 Act was intended by Congress as the next step in its efforts to address the national housing shortage. Indeed, it was characterized as "a permanent program" designed to replace the "temporary measure" in the 1988 Act. H.R.Conf.Rep. No. 943, 101st Cong., 2d Sess. 458, *reprinted in* 1990 U.S.Code Cong. & Admin.News 6070, 6163. Congress therefore crafted the new law with a direct reference to its "temporary" handiwork of several years before. The legislative history makes clear that experience under the earlier Act was a major component of the legislative deliberations. *See id.* Nevertheless, despite this close relationship between the 1988 and 1990 efforts, we discern no attempt by Congress to deal forthrightly with the issue posed by this case. Congress no doubt was aware of this litigation[11] and the problem of applying the legislation to an entity that had prepaid its mortgage before the 1988 statute became law. Congress also was well aware of the stringent standards required by the Supreme Court before legislation may be interpreted to upset vested rights. Despite these factors, Congress never addressed explicitly—in the language of the statute or in its legislative history— the application of the statute to entities such as Joint Venture that were released from the program prior to the President's signing the initial legislation. The new legislation repeats the terms of the 1988 Act:

> Subject to section 605 of the Cranston–Gonzalez National Affordable Housing Act, [making the 1990 Act effective upon enactment] the requirements of this subtitle shall apply to any project that is eligible low-income housing on or after November 1, 1987.

LIHPRHA, sec. 601, § 235, 104 Stat. at 4274. The legislative history simply notes, in the Senate Report, that "[t]he provisions of the amended subtitle would apply to any property whose owner is eligible to prepay [sic] the Emergency Low Income Housing Preservation Act of 1987 [the 1988 Act]." S.Rep. No. 316, 101st Cong., 2d Sess. 240, *reprinted in* 1990 U.S.Code Cong. & Admin.News 5763, 6002. On the basis of this legislative history, we cannot say that the 1990 Act presents any significant evidence of congressional intent with respect to the retroactivity of the earlier Act. For the same reasons, we cannot say that the 1990 Act, either by its terms or in its legislative history, evidences a congressional intent of destroying settled private expectations induced by the government's release of Joint Venture's mortgage obligation more than two years earlier. Given our conclusion that the definitive release by the government of the defendants' mortgage obligation before the President's approval of the 1988 Act was not disturbed by that Act, we certainly cannot construe the 1990 Act as disturbing those regulatory decisions. If Congress had intended such extraordinary action, it would have addressed the situation far more squarely.

Because we hold that ELIHPA and LIHPRHA do not have retroactive effect and thus may not be applied to void Joint Venture's prepayment, we need not reach the constitutional challenges raised by Joint Venture.

### Conclusion

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded to the district court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**11.** *See* S.Rep. No. 316, 101st Cong., 2d Sess. 31, *reprinted in* 1990 U.S.Code Cong. & Admin.News 5763, 5793.