**Abdelmagid MAZEN, Plaintiff,**

v.

**BOARD OF REGENTS OF REGENCY UNIVERSITIES OF THE STATE OF ILLINOIS, Defendant.**

No. 89–3100.

United States District Court, C.D. Illinois, Springfield Division.

April 15, 1992.

William R. Brandt, Bloomington, Ill., for plaintiff.

Carol J. Hansen Fines, Bridget E. Madigan Zalcman, Thomas Schanzle–Haskins, Springfield, Ill., for defendant.

OPINION

RICHARD MILLS, District Judge:

A question of retroactivity.

In 1989, Plaintiff filed this suit pursuant to the Civil Rights Act of 1964.

This case was placed on the Court's trial calendar beginning September 3, 1991, but was continued until December in order to accommodate an expert witness who was out of the country.

On November 21, 1991, the President of the United States signed into law the Civil Rights Act of 1991, which amended the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

May Plaintiff amend his complaint under the Civil Rights Act of 1991 to reinstate Defendants which have already been dismissed as parties by this Court?

No!

To do so would result in manifest injustice.

## I. FACTS

Plaintiff is an Egyptian-born professor who joined the Illinois State University's (I.S.U.) faculty in 1981 as a member of the Department of Management and Marketing. Professor Mazen's first contract was for a temporary position for the 1981–82 academic year. Subsequently, he was rehired for a second year on the "tenure track" with 1988 as the projected year of tenure. From 1982 through 1987, he was employed through a series of contracts, each covering the nine month academic year.

Prof. Mazen's evaluations for the time period between 1981 and 1986 ranged from "exceptional and outstanding" to "exceptional merit" to "merit." He was also nominated for the college research award and the college best teacher award.

In 1985, the Department of Management and Marketing split and the Management group became the Department of Management and Quantitative methods. Also during this time the Department had four different chairs.

In 1987, Prof. Mazen was twice accused of violating I.S.U.'s ethical code. On the first occasion, he was summoned to meet with the Department Faculty Status Committee (DFSC) concerning two articles which had been accepted for publication in 1986. At the meeting, he was informed that neither of the two articles would be considered in his promotion and tenure decision because "the methodology of the two articles was quite similar." The DFSC also questioned Prof. Mazen's junior co-authors.

The DFSC allegedly reversed its position and recognized the two articles when Prof. Mazen and his co-authors threatened legal action for the false ethical accusations.

Subsequently, Prof. Mazen received only a "merit" evaluation for his previous year's work. Also, the DFSC recommended denial of tenure and promotion citing as a basis a statistical analysis performed on Prof. Mazen's student evaluations and his incompetence in all areas, including teaching, research and service. In addition, he was accused a second time of violating the ethics code for an incident in 1985 in which a colleague had raised a question concerning the manner in which Prof. Mazen had listed a publication on his curriculum vitae. This was the first time that Prof. Mazen was made aware of the 1985 accusation because the 1985 committee had not considered the issue significant.

The DFSC's recommendations were forwarded to the College Faculty Status Committee (CFSC) and ultimately to the University Appeals Committee (UAC), both of which concurred with the denial of tenure and promotion.

Prof. Mazen appealed and an informal meeting was held with himself, the DFSC, the CFSC and the Department Chair. During this meeting one of Prof. Mazen's colleagues, Prof. Graeff, pointed angrily at Prof. Mazen and stated that the treatment Prof. Mazen had received was no worse than what Prof Graeff had been subjected to during his tenure proceedings presided over by the former department chair, Dr. Halim, who was also of Egyptian birth.

On April 30, 1987, I.S.U.'s Provost sent a letter to Prof. Mazen informing him that he would not be promoted to Associate Professor or granted tenure and that he would not be reappointed to a faculty position at I.S.U. following the 1987–88 academic year.

Consequently, Prof. Mazen filed a charge of discrimination with the Equal Employment Opportunity Commission, received his notice of his right to sue, and commenced this action on May 1, 1989. His amended complaint consisted of three counts: Count I alleged that I.S.U. discriminated against him on the basis of national origin in viola-

tion of Title VII, 42 U.S.C. § 2000e–2(a); Count II was brought pursuant to § 1983 against I.S.U.'s Provost and five other Defendants who took part in the recommendation denying Prof. Mazen's tenure and promotion; and Count III was brought against the same Defendants listed in Count II and alleged a violation of Prof. Mazen's liberty interests.

On May 14, 1990, this Court allowed the Defendants' motion to dismiss Count III pursuant to Fed.R.Civ.P. 12(b)(6) and on September 3, 1991, this Court granted summary judgment in favor of the five Defendants listed in Count II. Thus, this action proceeded with only Prof. Mazen and I.S.U. as parties.

Prof. Mazen now seeks to amend his complaint under the Civil Rights Act of 1991 by adding Counts V and VI against the same Defendants previously named in Counts II and III. Specifically, Count V is brought pursuant to 42 U.S.C. § 1981 and alleges that the Defendants violated Prof. Mazen's contractual rights. Count VI alleges that Defendants denied him equal protection of the laws in violation of 42 U.S.C. § 1983.

He seeks compensatory and punitive damages on each count and demands a jury trial.

## II. ANALYSIS

The United States Supreme Court has provided lower courts with two conflicting lines of authority for determining the retroactivity of statutes. In *Bradley v. School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court approved "the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley*, at 711, 94 S.Ct. at 2016. Fourteen years later, in *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court announced that "retroactivity is not fa-

vored in the law. Thus, congressional enactments ... will not be construed to have retroactive effect unless their language requires this result." *Bowen*, at 208, 109 S.Ct. at 471.

The district courts which have considered the retroactivity of the 1991 act have reached their conclusions according to whether their Circuit prefers the *Bowen* or the *Bradley* line of cases. The Seventh Circuit Court of Appeals has applied *both* the *Bradley* and the *Bowen* decisions to the question of retroactivity. *See Federal Deposit Insurance Corporation v. Wright*, 942 F.2d 1089 (7th Cir.1991) (holding that *Bradley* governs whether a statute is to be applied prospectively or retroactively); *Orrego v. 833 West Buena Joint Venture*, 943 F.2d 730 (7th Cir.1991) (citing *Bowen* for the proposition that federal statutes will not be construed to have retroactive effect unless their language requires such a result; but the court also cited *Bradley* for the manifest injustice rule). All the district courts in this circuit, with the exception of the Eastern District of Wisconsin in *Hameister v. Harley Davidson Inc.*, 785 F.Supp. 113 (E.D.Wis.1992), have employed the test established in *Bradley* in determining whether the Civil Rights Act of 1991 applies retroactively.[1]

■ Under *Bradley*, the court must apply a presumption of retroactivity unless there is clear congressional intent to the contrary or application of the law would result in manifest injustice to one of the parties. *Poston v. Reliable Drug Stores Inc.*, 783 F.Supp. 1166 (S.D.Ind.1992). The district courts in this Circuit which have considered this question have concluded that neither the statutory language nor the legislative history of the Act provide a clearly expressed congressional intent against retroactive application. *See e.g. Mojica v. Gannett Company Inc.*, 779 F.Supp. 94 (N.D.Ill.1991); *Bristow v. Drake Street Inc.*, No. 87–4412, 1992 WL 14262, U.S. Dist. LEXIS 499 (N.D.Ill. January 21, 1992); *Poston*, 783 F.Supp. at 1168.

---

1. The Court notes that had it chosen to apply the *Bowen* test to this case, the results would have been the same.

Thus, the first exception provided in *Bradley* does not apply.

 In determining whether the second exception applies, the court must consider: "1) the nature and identity of the parties; 2) the nature of the rights affected; and 3) the impact of the change in law on pre-existing rights." *In re Busick*, 831 F.2d 745 (7th Cir.1987).

The first factor concerns whether matter consists of a private dispute between individuals or involves national affairs and public entities. *Bristow*, 1992 WL 14262 at *1, U.S. Dist. LEXIS 499 at *3. Where a case embodies only private concerns, a court should be more reserved in applying the statute retroactively. *Graham v. Bodine Electric Co.*, 782 F.Supp. 74 (N.D.Ill. 1992). Applying the Act retroactively is favored when matters of "great national concern" are presented. *Wright*, at 1096.

This case involves both a private individual and a public entity and the civil rights issues presented are of great public concern. *See Poston*, 783 F.Supp. at 1169; *Graham*, 782 F.Supp. at 76. Thus, the first factor weighs in favor of applying the Civil Rights Act of 1991 retroactively.

The second and third factors mandate that the court consider whether application of the new statute "would infringe upon or deprive a person of a right that had matured or become unconditional" and whether "new and unanticipated obligations may be imposed upon a party without notice or opportunity to be heard." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020.

Defendant contends that the five additional individual defendants' dismissal from this litigation is a right which merits protecting. Defendant points out that the individual defendants have not participated in the preparation of the final pre-trial order, the determination of witnesses to be called or documentary evidence to be introduced at trial.

Although the Court does not agree with—and could not find any authority in support of—the assertion that dismissal from a case is a "right which merits protecting," the Court does acknowledge that allowing Plaintiff to amend his complaint at the eleventh hour, thereby reinvolving five individuals with reasonable beliefs that they were no longer parties to this suit, imposes new and unanticipated obligations upon parties with no notice. The former individual defendants would have to re-establish their contacts with their attorneys, formulate their case strategies, re-engage in final pre-trial conferences, and alter the trial plans already submitted to this Court.

This Court must observe that had it not encountered delays due to expert witnesses being out of the country and lost trial time due to its own absence during which it tried criminal cases, this case would have been over before the ink was dry on President Bush's signature.

## III. CONCLUSION

Consequently, this Court finds that it would be a manifest injustice to apply the Civil Rights Act of 1991 retroactively to this case.

*Ergo*, Plaintiff's motion to amend the complaint is DENIED.