Mildred NIGRELLI, Plaintiff,

v.

The CATHOLIC BISHOP OF CHICAGO, Defendant.

No. 84 C 5564.

United States District Court,
N.D. Illinois, E.D.

April 29, 1992.

James E. Beckley, Christopher James Barber, Adler, Kaplan & Begy, Mary Stowell, Linda Debra Friedman, Leng, Stowell, Friedman & Vernon, Chicago, Ill., for plaintiff.

Michael Jon Gill, Javier H. Rubinstein, Bettina Getz, Ruth Miller, James A. Serritella, Mayer, Brown & Platt, Chicago, for defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Mildred Nigrelli ("Nigrelli") brings this Title VII action against the Catholic Bishop of Chicago ("Catholic Bishop") claiming that she was discharged from her position as a parochial school principal as a result of her refusal to participate in sexual activity with the pastor of the parish to which she was assigned. Nigrelli moves to amend her complaint following the recent amendments to Title VII in order to obtain a trial by jury and to add claims for compensatory damages. For the reasons set forth below, we deny Nigrelli's motion for leave to file an amended complaint.

## BACKGROUND

Nigrelli was employed by the Catholic Bishop in the Chicago parochial school system for a twenty-year period beginning in 1963. From 1964 until her discharge in 1983, Nigrelli worked at St. Mary Star of the Sea School, the parochial school associated with St. Mary of the Sea Church. During her service at St. Mary's, Nigrelli was promoted to principal, the position she held at the time of her discharge. The circumstances leading up to Nigrelli's discharge are at issue in this suit.

As one of his responsibilities, the priest at St. Mary's reviewed the performance of the faculty and staff at the school. Beginning in 1975, the Catholic Church assigned a new priest to the St. Mary Star of the Sea Church. According to Nigrelli, from 1975 until 1981, that priest rated her performance as excellent. However, beginning in 1981, the priest assigned Nigrelli poor performance ratings. According to Nigrelli, her poor performance ratings were due to factors unrelated to the discharge of her duties as principal.

Nigrelli attributes her declining performance reviews to a series of events beginning in June 1981. At that time, an acquaintance of Nigrelli was suspicious that his wife and the priest were engaged in an improper relationship. Nigrelli confronted the priest about this purported affair. After this confrontation, Nigrelli alleges that her professional relationship with the priest changed.

Following the confrontation, Nigrelli claims the priest engaged in improper conduct of a sexual nature.[1] Nigrelli refused

---

1. Nigrelli characterized the improper conduct as including lewd suggestions, uninvited physical

every advance and objected to the conduct. Nigrelli charges that the priest retaliated against her for her refusal to participate in the improper activity by instigating her discharge and by blacklisting her from further employment in the Chicago parochial school system. Nigrelli attempted to file a grievance with the Catholic Archdiocese, but she claims that the Catholic Bishop refused to process her complaint, because of the nature of her charges against the priest.

Nigrelli filed a timely charge of employment discrimination with the Equal Employment Opportunity Commission, and she received a right to sue letter. Thereafter, Nigrelli filed a Title VII discrimination suit against the Catholic Bishop. That case has been pending since 1984.

Recently, Congress amended Title VII effective November 21, 1991. Pub.L. No. 102–166. (Hereafter we will refer to the 1991 Amendment as the "Amendment" or the "Act.") That amendment allows plaintiffs to recover legal damages and provides plaintiffs the right to a trial by jury. Following that amendment, Nigrelli moved for leave to file an amended complaint to request a trial before a jury and to expand her ad damnum clause to seek compensatory damages. The Catholic Bishop argues the court should not apply the 1991 Amendment retroactively, and therefore it objects to Nigrelli's motion.

## DISCUSSION

■ Leave to amend should be freely given when justice requires, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); Fed.R.Civ.P. ("Rule") 15(a); however, the district court has discretion to decide whether a party can amend a complaint. *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir.1991); *Amendola v. Bayer*, 907 F.2d 760, 764 (7th Cir.1990) (a denial of leave to file an amended complaint will be overturned only if the district court abused its discretion). A district court may

deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading or could not survive a second motion to dismiss. *Perkins*, 939 F.2d at 472.

■ The only issue before this court is one faced by all courts across the country: whether the 1991 Amendment to Title VII should be applied retroactively. Our resolution of this issue will determine whether we allow Nigrelli to amend her complaint.

■ Whether a statute should be applied retroactively is a matter of statutory construction. *United States v. Kimberlin*, 776 F.2d 1344, 1347 (7th Cir.1985), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986). The text of the 1991 Amendment does not state whether the Amendment is to apply retroactively. Section 402(a) provides as follows: "Except as otherwise specifically provided, this Act and the amendments made by this Act, shall take effect upon enactment." Courts construe this language as equivocal in regard to retroactivity. *E.g. Fray v. Omaha World Herald*, 960 F.2d 1370 (8th Cir. 1992).

■ When Congress's intent cannot be determined from the language of the statute, courts can rely on other sources to determine congressional intent. *Illinois EPA v. United States EPA*, 947 F.2d 283, 290 (7th Cir.1991). For example, courts can look to legislative history; including subcommittee hearings, marking up sessions, floor debates, and House and Senate reports, for direction regarding congressional intent. This seemingly unambiguous task, however, is complicated by two disparate lines of Supreme Court authority which create contradictory presumptions as to retroactivity.

### A. *Supreme Court Decisions*

In *Bradley v. School Bd.*, 416 U.S. 696, 724, 94 S.Ct. 2006, 2022, 40 L.Ed.2d 476 (1974), the Court created a presumption in favor of retroactivity by finding that "a

---

contact, and invitations to engage in sexual activity. (For a more particular description of Nigrelli's allegations, the reader should refer to

Nigrelli's proposed amended complaint at paragraph 9.)

court is to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016. The court created two significant exceptions to the general principal of retroactivity. The first exception occurs when Congress intends to have a law be applied prospectively. *Bradley,* 416 U.S. at 715–16, 94 S.Ct. at 2018–19. The second exception allows courts to apply a law prospectively to avoid "manifest injustice." *Bradley,* 416 U.S. at 716–17, 94 S.Ct. at 2018–19.[2]

Eleven years later, the Supreme Court formulated a rule at odds with *Bradley. Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985). In *Bennett,* the Supreme Court found that changes in substantive requirements for federal grants should not be presumed to operate retroactively. *Bennett v. New Jersey,* 470 U.S. at 638, 105 S.Ct. at 1559. The Court reconciled its decision with *Bradley* by finding that *Bennett* fell within one of the limitations to the *Bradley* principle. That limitation involved an intervening change in the law which would infringe upon or deprive a person of a right that had matured or had become unconditional. In addition, the Court found that this limitation comported with another rule of statutory interpretation, that statutes affecting substantive rights and liabilities are presumed to have only prospective effect. *Bennett,* 470 U.S. at 639, 105 S.Ct. at 1560.[3]

Three years later, the Court handed down a decision which seems to ignore its rule in *Bradley. Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). In Georgetown, the Supreme Court held that the Secretary of Health and Human Services could not implement regulations retroactively. *Georgetown Hospital,* 488 U.S. at 208, 109 S.Ct. at 471. In deciding the retroactivity issue, the Court stated as follows:

> Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.

*Id.* (citations omitted).

By 1990, the Court acknowledged the conflict that it had created. *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990). In *Kaiser,* the Court stated that there was a "tension" between the rule articulated in *Bradley* and the rule articulated in *Georgetown. Kaiser,* 494 U.S. at 837, 110 S.Ct. at 1577. The *Kaiser* Court did not need to reconcile the two lines of precedent because in that case the legislative history indicated that the statute should be applied retroactively and "under either view, [*Bradley* or *Georgetown* ], where the Congressional intent is clear, it governs." *Id.*

### B. *7th Circuit Decisions*

In *Federal Deposit, Ins. Corp. v. Wright,* 942 F.2d 1089 (7th Cir.1991), Judge Ripple followed *Bradley* . and applied amendments to the Financial Institutions

---

**2.** The court formulated a three-part analysis to determine whether manifest injustice would occur. First, a court must consider the nature and identity of the parties. The focus of this factor is the balance between the public versus the private nature of the dispute. For example in *Bradley,* the Court found as significant that the defendant School Board was a publicly funded governmental entity, that school desegregation litigation was different from mere private cases, and that plaintiffs bringing civil rights legislation were acting as private attorneys' general to vindicate policies Congress considers important.

Second, the court must analyze the nature of the plaintiff's rights. Courts should refuse to apply an intervening change to a pending action where to do so would infringe upon or deprive a person of a right that had matured or become unconditional.

Finally, a court must consider the nature and impact of the change in the law upon those rights or the possible unanticipated obligations which may be imposed upon a party without notice or an opportunity to be heard. *See Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019.

**3.** Justice Stevens and Justice Marshall dissented and would have applied the law in effect at the time of its decision following the *Bradley* decision. *Bennett,* 470 U.S. at 653–54, 105 S.Ct. at 1567–68.

Reform, Recovery and Enforcement Act of 1989 ("FIRREA") retroactively.[4] Judge Ripple noted the tension between the presumption of retroactivity in *Bradley* and the presumption of non-retroactivity in *Georgetown*. *Wright*, 942 F.2d at 1095 n. 6. Nonetheless, Judge Ripple followed *Bradley* because there was no prejudice in applying *Bradley* and its progeny to the facts in that particular case. *Id.*

Two weeks later, Judge Ripple, writing on behalf of a different panel, issued the next Seventh Circuit pronouncement regarding retroactivity. *Orrego v. 833 West Buena Joint Venture*, 943 F.2d 730 (7th Cir.1991).[5] *Orrego* involved two amendments to federal low-income housing legislation. With respect to the 1988 amendment, Judge Ripple cited to *Georgetown*, *Bennett* and *United States v. Security Indus. Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) for the general rule that Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. However, with respect to the 1990 amendment, the Seventh Circuit stated that "[w]e are aware that, as a general rule, a court applies the law in effect at the time of the decision" citing to *Bradley*. *Orrego*, 943 F.2d at 736. Thus, the Seventh Circuit seems to be straddling the fence and has not opted for one line of Supreme Court authority over the other.

### C. *Northern District of Illinois Decisions*

We will not engage in a complete discussion of the jurisprudence produced by our brethren on the Northern District of Illinois. Suffice it to say that there seems to be a roughly even division in our district. At least three judges have opted for re-

troactivity; *Grahm v. Bodine Electric Co.*, 782 F.Supp. 74 (N.D.Ill.1992); *Bristow v. Drake Street, Inc.*, No. 87 C 4412, slip op., 1992 WL 14262 (N.D.Ill. Jan. 21, 1992); *Mojica v. Gannett Co.*, 779 F.Supp. 94 (N.D.Ill.1991); while at least two judges apply the 1991 Amendments prospectively. *Ribando v. United Airlines, Inc.*, 787 F.Supp. 827 (N.D.Ill.1992); *Sofferin v. American Airlines*, 785 F.Supp. 780 (N.D.Ill.1992); *McCullough v. Consolidated Rail Corp.*, 785 F.Supp. 1309 (N.D.Ill. 1992).[6]

Because we find no clear direction from the Supreme Court, the Seventh Circuit, or our brethren on the Northern District, we do not feel constrained by any of the above cited cases.

### D. *Other Circuits*

Recently, two circuits have ruled that the 1991 Amendments should be applied prospectively. In the first decision, *Vogel v. Cincinnati*, 959 F.2d 594 (6th Cir.1992), the Sixth Circuit noted the uncertainty generated by Congress's failure to specify whether the amendments should be applied retroactively or prospectively and also the split in Supreme Court authority. It therefore looked to a policy statement issued by the Equal Employment Opportunity Commission ("EEOC") that it would not seek damages under the 1991 Amendment for activity which occurred prior to the effective date of the amendment. *Vogel*, at 598. The Sixth Circuit deferred to the EEOC's policy statement, citing to the general rule that a reasonable construction given to a statute by an agency responsible for its administration must be accorded deference. The Sixth Circuit therefore elected to apply the amendment prospectively.[7]

---

4. Congress amended FIRREA four months before trial; however, in motions in limine and during trial, the FDIC never brought the amendments to the court's attention. It was not until the matter reached the Seventh Circuit that the issue was raised. *Wright*, 942 F.2d at 1094.

5. Judges Flaum, Ripple and Manion decided *Wright;* Judges Coffey, Ripple, and Kanne decided *Orrego.*

6. For a list of district courts across the country that have decided the retroactivity issue, the

reader should refer to *Fray v. Omaha World Herald Company*, 960 F.2d 1370 (8th Cir.1992) (Appendix).

7. After the EEOC issued its policy statement, the United States Commission on Civil Rights criticized the EEOC for adopting that policy. The Civil Rights Commission encourages the EEOC to reconsider its position.

The Eighth Circuit also elected to apply the 1991 Amendment prospectively. *Fray v. Omaha World Herald*, 960 F.2d 1370 (8th Cir.1992). The *Fray* Court reached its conclusion after analyzing each step of the legislative history of the 1991 Amendment.

In 1990, Congress passed a Civil Rights bill that retroactively overruled a number of Supreme Court Title VII decisions.[8] President Bush vetoed the bill, because of its retroactivity rule, and Congress failed to override that veto. *Fray*, at 1374. Subsequently, Congress renewed its interest in amending Title VII and passed a bill with an identical retroactivity provision. *Id.* The Senate's compromise bill deleted the retroactivity provisions. *Id.* That bill passed Congress and was signed into law by President Bush on November 21, 1991. The Eighth Circuit found that Section 402(a) was ambiguous as to the retroactivity issue.[9]

After reviewing both the Act and the legislative history, the *Fray* court found that "[p]roponents of retroactively overruling *Patterson* [v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)]* [one of the targeted Supreme Court decisions] commanded a majority in both houses of Congress, but they could not override the President's veto of a 1990 bill that contained express retroactive provisions." *Fray*, at 1377.

The Eighth Circuit did not follow the *Bradley* retroactivity presumption, because it construed the legislative history as supporting prospective application. The Eighth Circuit recognized that Congress "knew from their 1990 experience that, because of the President's veto, they could not enact a law that purported to legislate retroactively." *Fray*, at 1377. The *Fray* court concluded that "[w]hen a bill mandating retroactivity fails to pass, and a law omitting that mandate is then enacted, the

legislative intent was surely that the new law be prospective only; any other conclusion simply ignores the realities of the legislative process." *Fray*, at 1378. The Eighth Circuit's conclusion comported with the *Georgetown* rule, since there was no clear indication that Congress wanted to diverge from *Georgetown's* view of prospectivity. It therefore applied the 1991 Amendment prospectively. *Fray*, at 1378.

We will apply the 1991 Amendment prospectively for the following reasons. First, we are persuaded by the *Fray* court's conclusion that Congress passed the 1991 Amendment knowing that it would not survive a veto if it contained a retroactivity provision. Thus, we conclude, as did the *Fray* court, that Congress must have intended that the 1991 Amendment apply prospectively only.

Second, the Seventh Circuit instructs us to "give respectful consideration to the decisions of the other courts of appeals and follow them whenever they can." *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir.1987); *Richards v. Local 134, International Brotherhood of Electrical Workers*, 790 F.2d 633, 636 (7th Cir.1986). We understand this instruction to suggest that district courts should defer to analogous opinions from other circuits whenever possible. *Richards*, 790 F.2d at 636 (although decisions of other circuits are not controlling, a district court should give them substantial weight). Since we have no clear direction from either the Supreme Court or the Seventh Circuit in regard to retroactivity, we are guided by the Seventh Circuit's instruction in *Colby*. We therefore will follow the Eighth and Sixth Circuits, and we will apply the 1991 Amendment prospectively.

## CONCLUSION

Since we will apply the 1991 Amendment prospectively, Nigrelli cannot take advan-

---

**8.** For a list of targeted cases, see *Sofferin v. American Airlines, Inc.*, 785 F.Supp. 780, 784 n. 9 (N.D.Ill.1992).

**9.** The *Fray* court noted that two provisions of the Act were expressly made prospective. Section 109, which specifically overruled *EEOC v. Arabian American Oil Co.*, — U.S. —, 111

S.Ct. 1227, 113 L.Ed.2d 274 (1991), states that the amendment made by that section shall not apply to conduct occurring before the date of enactment. *Fray*, at 1376. Section 402(b) was intended to protect the Wards Cove Packing Company from any retroactive application of Section 103 to its ongoing litigation.

tage of the additional remedies provided therein or the right to a jury trial. Therefore, we deny Nigrelli's motion to amend her complaint.